JOSEPHINE H. MURRAY and ELIDA H. PURDY, appellants,

*v.*

RACHEL A. LYNCH et al., respondents.

[Submitted October 31st, 1901.　Filed March 10th, 1902.]

1. When application is made to a surrogate to admit a will to probate and grant letters testamentary thereon, jurisdiction is conferred upon him by our statute to act thereon, except in three classes of cases, viz., (1) when he finds doubts arise on the face of the will, or (2) when a caveat is put in against proving a will, or (3) when a dispute arises respecting the existence of a will.

2. In either of the cases above cited, the surrogate is forbidden to act upon the application, but is required to issue citations to all persons concerned, returnable to the orphans court, and jurisdiction is conferred upon that court to hear and determine the matters in controversy.

Murray *v.* Lynch.

3. When a surrogate, upon such application, is not thus prohibited from acting thereon, his adjudication admitting or refusing to admit the will to probate, is reviewable by an appeal to the orphans court made by any person interested, and thereupon the orphans court is given jurisdiction to proceed thereon as if the will had not been proved before the surrogate; provided, the appeal is taken within the period after the proceedings before the surrogate fixed by the statute.

4. When a surrogate has duly acted upon such an application and has made an adjudication and decree thereon, the power conferred upon him has been exhausted, and he may not thereafter issue citations requiring the parties to appear in the orphans court in respect to any controversy over the probate of the will.

5. The jurisdiction of the orphans court over the probate of the will, after it has been duly admitted to probate by the surrogate, only attaches when an appeal has been taken within the time limited by the statute. No jurisdiction will be acquired by citations thereafter issued by the surrogate and returned into the orphans court.

6. A paper-writing purporting to be a last will and testament of a person who died domiciled in Essex county, was offered for probate before the surrogate of that county. There appeared nothing on the face of the will to raise doubt. No caveat was filed and no dispute arose upon the existence of a will. The surrogate took the depositions of the witnesses and made a decree admitting the will to probate and granting letters testamentary thereon. No appeal was taken from the surrogate's decree. After the time for appeal had passed, heirs-at-law and next of kin of the decedent filed a petition with the surrogate stating objections to the will as not well executed, or induced by undue influence. The petition treated the probate of the surrogate as of common form, and prayed that respondents should be required to reprove it in solemn form. Thereupon the surrogate issued citations to the parties interested returnable to the orphans court, and that court dismissed the petition and citations for lack of jurisdiction.—*Held,* that the surrogate had no jurisdiction to entertain such a petition and issue citations thereon, and that the orphans court had no jurisdiction to determine the matter thus presented.

7. *Quære.* Whether the distinction between probate in common and in solemn form, known to the English ecclesiastical and probate practice, is applicable to any form of probate in this state, but *held* that the probate by a surrogate by the jurisdiction conferred on him, is not a mere probate in common form, but an adjudication upon proofs and *in rem,* reviewable only by appeal in the manner provided by the statute. The *dictum* in *Straub's Case, 4 Dick. Ch. Rep. 264,* disapproved.

On appeal from the Essex county orphans court.

*Mr. Joseph A. Beecher,* for the appellants.

*Mr. Joseph Coult,* for the respondents.

MAGIE, ORDINARY.

The controversy in this cause is presented to this court by an appeal of Josephine H. Murray and Elida H. Purdy from an order of the orphans court of Essex county dismissing a petition, which came before the orphans court in the manner hereinafter described, on the ground of want of jurisdiction in that court to hear and determine the matters set up therein.

The printed book discloses that the order appealed from was made by the orphans court upon the following case, viz.: (1) An application presented to the surrogate of Essex county on February 9th, 1900, by Rachel A. Lynch and Emma L. Hendricks, as executrices named in the last will and testament of Rachel A. Cartwright, late of the city of Newark, in said county, deceased, for probate of said will; (2) a certified copy of the will of Rachel A. Cartwright, deceased, and a codicil thereto, and of the proofs taken thereon by the surrogate, and a certified copy of an order or decree of the surrogate made February 9th, 1900, adjudging the instrument offered for probate to be the last will and testament of Rachel A. Cartwright, deceased, and admitting the same to probate and directing letters testamentary to be issued to said applicants, and of the letters issued thereon; (3) a petition presented to said surrogate on March 22d, 1901, by Josephine H. Murray and Elida H. Purdy, setting up that Josephine H. Murray was a sister and Elida H. Purdy was a daughter of a deceased sister of Rachel A. Cartwright, deceased; that Rachel A. Cartwright died in Newark on or about January 28th, 1900, seized and possessed of valuable real and personal estate; that Rachael A. Lynch and Emma L. Hendricks, on February 9th, 1900, had presented to the surrogate an instrument purporting to be the last will and testament of Rachael A. Cartwright, deceased, and a codicil thereto, wherein they were named as executrices; that the surrogate had admitted the will and codicil to probate *in common form,* and issued letters testamentary thereon to said executrices, and charging that the will and codicil thus admitted to probate were not, in fact, the last will and testament of Rachel A. Cartwright, deceased, but, if executed by her, were executed under misapprehension, and further charging that the same were obtained from deceased by

undue and improper influence, and, after reciting that certain persons named claimed under said will and codicil and were entitled and intended to be made parties to the proceedings, it was thereon prayed that the probate in common form might be opened for the purpose of proving the alleged will and codicil in solemn form, in accordance with the established rules and practice, and that citations should issue, citing the above-named executrices and parties in interest to appear before the orphans court to reprove, in solemn form, the instrument alleged to be the will and testament of said deceased. It is not expressly stated in the petition, but I think it may be inferred therefrom, that Rachel A. Cartwright died without leaving any lineal descendants.

From recitals in the order appealed from it appears that citations, such as were prayed for in the petition, were issued by the surrogate and returned served into the orphans court, and the order appealed from was made on motion of counsel for the executrices, after hearing them, and also counsel for the petitioners (now appellants), and counsel for some of the cited parties.

In my investigation of this important cause I have been greatly aided by the learned and exhaustive opinion of the judge of the orphans court, giving his reasons for declining to take jurisdiction of the matters presented by the proceedings, and also by the able briefs presented by the counsel of the parties to this controversy.

On the part of appellants, counsel point to the well-known distinction between probate of wills in common form and the like probate in solemn form, recognized in England by the courts there administering probate law, and the practice of those courts to permit and require a will, although once proved in common form, to be again proved *per testes,* or in solemn form, after citation or notice and opportunity for parties interested to be heard in objection, even after the lapse of a long period, which some of the text-writers suggest extends to the length of the period of prescription. They strenuously contend that the doctrines and practice in that respect were brought to this country and conferred upon our courts which exercise juris-

diction over the probate of wills. They further contend that the applicability of the doctrine and practice in question to all our probate courts has been settled by an authoritative decision binding upon this court.

It is not contended that any trace of this doctrine, as applicable to our probate procedure, can be discovered in our adjudicated cases, or in the records of probate courts, until the decision of *Straub's Case, 4 Dick. Ch. Rep. 264,* in 1892. Before that I think I am warranted in saying that the bar in general accepted a probate in the usual form as justifying executors in proceeding to settle the estate, and to give deeds of real estate under powers conferred, to pay legacies and to distribute the residue, without any apprehension that, during a long period thereafter, when witnesses were dead and facts made difficult, if not impossible, to prove, they might be compelled, by anyone interested in avoiding the will, to reprove it.

It is to *Straub's Case* that appellants appeal, and insist it authoritatively points out and approves the practice adopted in the case now before us. That case was decided by my predecessor, Chancellor McGill, when sitting as ordinary, and this is the language in which he expressed his opinion:

"There are two methods of obtaining probate known to the practice of the English ecclesiastical courts—one in common form and the other in solemn form, or *per testes.* The proof is said to be in common form when the executor presents the will for probate in the absence of the parties in interest (to be affected by the probate), and, without citing them, proceeds, *ex parte,* with his proof; and it is said to be solemn form when those in interest are cited to be present at the probation or approbation of the will. When a will is proved in common form the court, at any time within thirty years after probate, may require the executor, of its own motion or at the instance of the next of kin or other person interested, to prove the will in solemn form. *1 Wms. Ex. 334 et seq.; Waters* v. *Stickney, 12 Allen 4.* This practice is not a hardship upon the executor, for it is within his power and a dictate of ordinary prudence in the first instance, if there be doubt as to the propriety or security of probate in common form, to seek probate in solemn form, causing those

interested to be cited, and therefore to be bound by the adjudication. If it was the appellant's design to pursue this practice in the application now reviewed, and have the will of Mr. Straub proved in solemn form, she failed. Her application should have been made to the surrogate, for it is substantially an application to reprove the will, a method of direct attack upon a probate previously had by proof in common form. Over such an application the orphans court obtains its jurisdiction through the surrogate. Such jurisdiction springs from an issue suggested in a proceeding which originates before the surrogate. The statute does not contemplate that application for probate shall in any case be made to the orphans court. That court, so far at least as matters of probate are concerned, is merely the trial tribunal of issues suggested before the surrogate. The petition should not be to set aside the probate, but to reprove the will in solemn form. Such proof is denominated in the books 'contentious business.' It promises controversy, and, upon the presentation of a petition for it to the surrogate, a controversy would arise, and then, under our statute, it would become the duty of the surrogate to cite the parties in interest, including the executor, to appear before the orphans court, in order that the executor might there proceed, in the presence of the parties cited, if they should appear in answer to the citation, to prove the will in solemn form."

If this opinion was essential to the decision of that case, or was pertinent to the questions involved, I should unquestionably follow it. If not, the opinion is entitled to the respect due to the solemn utterances of the late chancellor, a careful and able judge in matters of administration.

I feel obliged to declare that the opinion in question, in respect to the course of practice permissible to require probate of a will in solemn form, was wholly unnecessary to the decision of the case, and I do not deem it binds the orphans court or the prerogative court to approve or adopt that practice. An examination of the case shows that a will purporting to have been executed by Anthony Straub was proved before the surrogate in the usual way, and without notice to the next of kin. No appeal had been taken from the surrogate's action, but eleven months

after the probate the sister of deceased applied to the orphans court to set the probate aside, on the ground that the will was the product of fraud and undue influence. The orphans court allowed an order to show cause why the prayer of the petition should not be granted, but after hearing discharged that order. From the order discharging the rule to show cause an appeal was taken to this court. The ordinary recognized that the single question presented was whether an orphans court, upon a direct application to it, could set aside a surrogate's probate after the time limited by statute for appeal had expired. He declared that while the orphans court has general jurisdiction over subjects prescribed by the statute of which it is the creature, the control of judgments of the surrogate was not one of those subjects, except it be accomplished through review upon appeal. His conclusion was that the orphans court rightly refused to take jurisdiction in that case. It is obvious, therefore, that what the learned ordinary declared respecting the practice of attacking before the surrogate a will previously proved by him, after the time for appeal had elapsed, was wholly *obiter*. The affirmance of his decree in that case by the court of errors, reported *sub nom. Scharer* v. *Schmidt, 5 Dick. Ch. Rep. 795,* is, of course, a binding adjudication only in respect to the point involved in the litigation. That the court of errors did not design to express, by such affirmance, any conclusion with respect to the practice described and the remedy declared to be admissible by the learned ordinary, is plainly to be seen from the language of that court in *Gordon* v. *Olds, 7 Dick. Ch. Rep. 317,* to this effect: "Whether, when a will is admitted to probate in compliance with the statute, the court, of its own motion, or at the instance of the next of kin or other person interested, may require it to be proved in what is known in the English law as solemn form, and if so, by what practice and procedure and in what court such an investigation shall be conducted, we do not decide."

. Notwithstanding my conclusion that the opinion expressed by the ordinary in the *Straub Case* has not, in respect to the point now in question, the force of authority requiring the submission of this court, yet the deliberately expressed views of that learned

Murray *v.* Lynch.

judge carry great weight and require careful examination before dissenting thereform.

It is to be observed that the opinion under consideration is divisible into two propositions. The first is that the distinction between the probate of a will in common form and the probate thereof in solemn form is part of the probate law of this state, and binding upon all our probate courts, and that a probate before any such court in any case where the parties in interest have not been cited to attend, or, perhaps, have not attended upon such probate, is a probate in common form, and that any such parties not cited or not attending may thereafter, for an indefinite period, require the will to be reproved in solemn form. The second proposition is that when a probate of a will is made by a surrogate, under our statute, the same surrogate, or his successor in office, has jurisdiction, upon application to him by any party in interest, to issue citations returnable into the orphans court, notwithstanding the time for appeal has passed, and that the orphans court acquires jurisdiction, by the return of such citations, to proceed to require the will to be again proved, and to hear and determine any contest that may arise thereon.

In the opinion of the orphans court in this cause the first proposition is combated. It is pointed out that in the early practice of the English courts the probate of a will in common form was granted upon a mere affidavit of the executor that he believed the paper propounded by him was the last will and testament of the deceased, and the court thereupon simply admitted the will to probate. Under various acts of parliament and rules of court other affidavits of more extensive import were required, but there was no proof by the subscribing witness, nor was there any adjudication that the will was, in fact, the will of the deceased. A form of such a probate will be found in Brown's "Treatise on the Principles and Practice of the Court of Probate" (page 209), revised and adapted by Mr. Powles to the practice of the high court of justice in probate business. Judge Skinner thereupon distinguished the English probate in common form from the probate by a surrogate under our statutes, on the ground that the latter was required to be allowed only after proof of the subscribing witnesses to the facts

made requisite to a testamentary disposition by. our law, and that the customary order or decree thereon adjudicated that the instrument offered was the last will and testament of the deceased. From the adjudication of our courts that in allowing probate the surrogate performed a judicial function, and that his judgment was *in rem,* he drew the conclusion that the surrogate's act was different from, and more than, a probate in common form, and that the English doctrine did not apply to such a probate.

I do not deem it necessary or advisable to express any opinion upon the conclusions of Judge Skinner in this regard. · I merely suggest that if, upon examination of the second proposition of the learned ordinary in the *Straub Case,* a conclusion is reached that he erred in holding that a surrogate, by whom, or by whose predecessor in office, a will had been admitted to probate without the attendance of the parties in interest, had jurisdiction to cite the parties into the orphans court, or that the orphans court thereby acquired jurisdiction to hear and determine a contest thus initiated, those circumstances would go far to maintain his conclusion that a probate thus allowed was more than a probate in common form, but was rather an adjudication, which, if not reviewed in the manner prescribed by law, became conclusive upon all parties. My reason for· declining to put the case on that ground arises from the state of the decisions in respect to the probate of wills in the prerogative court when allowed upon the mere proof of the subscribing witness, without citations to parties in interest.

In a celebrated case a paper-writing was presented for probate as a will to Chancellor McGill, sitting as ordinary, and it was made to appear that George P. Gordon, the alleged testator, had died domiciled in this state; that the persons named therein as executors had died; that no caveat had been filed in the county in which deceased was domiciled, and that it would be difficult, if not impossible, to ascertain what interests would be affected by probate, and who should be notified of the proceedings. Under such circumstances, it was deemed expedient by the ordinary to admit the will to probate in common form, and if contest should arise, to thereafter require solemn proof, upon such notice to

parties as should be practicable or proper. The will was thus admitted to probate and administrators *cum testamento annexo* were appointed. Afterwards parties in interest applied to the ordinary for a reproof of the will, and, on their application, the ordinary directed the administrators to make proof of the disputed will in solemn form, after giving notice to parties interested. The order first made has been examined, and it is noticeable that there is no direct adjudication that the paper propounded was the will of deceased. There is a recital that the proofs of due execution were sufficient, and that no cause was shown to the contrary. Thereupon it was ordered that it should be admitted to probate as the will of the deceased and letters of administration should be issued thereon. In the contest that followed the ordinary found that the alleged will was a forged document, and denied probate to it, revoking the probate before granted in common form. *Gordon's Case, 5 Dick. Ch. Rep. 397.*

The decree thus made was brought up to the court of errors and appeals by appeal, and was there affirmed on the ground that the paper presented for probate was not the will of Gordon, but a forgery. *Gordon v. Olds, 7 Dick. Ch. Rep. 317.* In respect to the practice followed in the cause, the *per curiam* opinion of the court pointed out that the circumstances under which the will was produced for probate before the ordinary tended to excite suspicion of its genuineness, and made it proper that it should not be admitted to probate on mere formal proof, and it was said that the ordinary, in admitting it to probate on such proof, contemplated that his order should be final only if the will stood the result of a controversy, if a contest arose. The court declared that there was no doubt of the regularity of the practice and procedure adopted.

It is observable that this conclusion of the court of errors may have been grounded either on the fact that the first probate was allowed with the express intent to permit the alleged will to be contested, if parties in interest desired to do so, or on the notion that a probate thus allowed by the ordinary was open to such a contest under the extensive powers of the prerogative court. It may result that such a probate in this court resembles, or is

equivalent to, probate in common form. In this uncertainty I shall express no opinion as to the effect of a probate of a will in this court in the usual form, and deem it entirely unnecessary to do so; for the question before us does not involve the broad powers existing in this court over the probate of testamentary instruments. It relates solely to the jurisdiction conferred upon the surrogate and orphans court in cases like that now presented.

It must be conceded that the power of surrogates and orphans courts in respect to the probate of wills is only that conferred by statutes. The jurisdiction of either court in that respect must be found in the express enactment of some legislative act, or in necessary implication therefrom. This doctrine is elementary, and needs no citation of authorities in its support.

At the time the will in question in this cause was admitted to probate by the surrogate the power conferred on him was expressed in the provisions of section 13 of the act entitled "An act respecting the orphans court, and relating to the powers and duties of the ordinary and the orphans courts and surrogates" [Revision of 1898], approved June 14th, 1898. *P. L. of 1898 p. 715.* By those provisions jurisdiction was conferred on surrogates to take depositions to wills and to admit the same to probate and grant letters testamentary thereon, except in three classes of cases, viz.: (1) When doubts arise on the face of the will—*i. e.,* on the face of the paper offered as a will; (2) when a caveat is put in against proving a will, and (3) when disputes arise respecting the execution of a will. In any of these excepted cases the surrogate is not only forbidden to act, but is expressly required to issue citations to all persons concerned to appear in the orphans court of the same county, and to that court is expressly given jurisdiction to hear and determine the matters in controversy.

Under legislation of a similar, though not identical, character, this court has held that the surrogate is thereby invested with a judicial function and holds a statutory court, and that a grant of letters testamentary by him is a proceeding *in rem,* resulting in a judgment which may not be impeached collaterally, and can only be attacked by appeal. *Quidort's Administrators* v. *Pergeaux, 3 C. E. Gr. 472.* The doctrine of that case was ap-

proved by the court of errors and appeals in *Ryno's Executors* v. *Ryno's Administrators, 12 C. E. Gr. 522*, and it was therein further adjudged that when a surrogate had granted probate of a will the power conferred on him was exhausted; that his decree, until reversed, was final and conclusive; and that after a surrogate had admitted a will to probate and issued letters testamentary thereon, his subsequent grant of letters of administration was absolutely void. In a subsequent case in this court, where it appeared that a will had been admitted to probate by a surrogate before the expiration of ten days from the death of the testator, it was held that the adjudication of the surrogate, though irregular and illegal, could not be attacked in the orphans court in any other mode than by the appeal permitted by the statute. The refusal of the orphans court to set aside the probate and revoke the letters testamentary issued thereon, upon a direct application for that relief and not by way of appeal, was approved and affirmed. *In re Evans, 2 Stew. Eq. 571.*

By the provisions of section 202 of the act of 1898, above cited, the proceedings of surrogates respecting the probate of wills are expressly made subject to an appeal to the orphans court by any person interested and to proceedings thereon as if the will had not been proved, but there is a proviso that such appeal must be taken within three months after the proceedings before the surrogate, or within six months after such proceedings when the person appealing resided out of the state at the death of the testator.

The case presented to the orphans court was not brought before it by an appeal. The time for an appeal had long before elapsed. The proceedings under review commenced by an application to the surrogate more than thirteen months after the admission of the will to probate by him. It results, in my judgment, that after the surrogate had admitted the will to probate and the time for appeal had elapsed, he had exhausted his power and was without jurisdiction to cite the parties into the orphans court, and that the latter court was without jurisdiction to hear and determine any controversy respecting the probate of the will brought before it by such citations. The jurisdiction was properly refused in the court below.

It is argued that this conclusion will, or may, operate to deprive heirs or next of kin of property in the estate of a deceased person, in violation of fundamental principles, or without due process of law. This consideration seems to me inadmissible in the case before me. If the legislation in question operates to make the decree of a surrogate admitting a will to probate a conclusive adjudication upon rights of property in the absence of an appeal, and if I should conclude that such legislation is not within the power of the legislature to enact, the result would not affect the question before me, which is, whether there has been conferred upon the orphans court power to compel the executors of a will admitted to probate by a surrogate to reprove the will in that court, after the time for appeal has elapsed and no appeal has been taken.

I may be permitted to make another observation in respect to the view expressed by Chancellor McGill to the effect that the practice he deemed applicable to the probate of wills by a surrogate "is not a hardship upon the executor, for it is within his power and a dictate of ordinary prudence in the first instance, if there be doubt as to the propriety or security of probate in common form, to seek probate in solemn form, causing those in interest to be cited, and therefore bound by the adjudication." In my judgment no power has been conferred upon the surrogate to issue citations requiring the parties in interest to appear before him on the probate of a will by him, and his adjudication would not be binding on such parties by reason of the issuing and service of such unauthorized citations. His power to issue citations is confined to the three classes of cases before referred to, and the effect of such citations is to transfer the jurisdiction over the probate to the orphans court. While the executor who propounds a will for probate before a surrogate may properly point out to the surrogate any doubts arising on the face of the will, the power to issue citations in that class of cases will not arise except on an adjudication of the surrogate that such doubts are raised on the face of the will. The executor propounding the will is obviously without power to file a caveat against probate, or to raise a dispute respecting the existence of a will. *In re Chamberlain, L. R. 1 P. & D. 316.* Such an executor cannot, there-

forc, require the surrogate before whom he offers the will for probate to issue citations transferring the probate to the orphans court. If the probate of the surrogate is not a probate in solemn form, the executor is powerless to make it such.

The order appealed from must be affirmed.