# CASES

# THE PREROGATIVE COURT

OF

## THE STATE OF NEW JERSEY.

### MAY TERM, 1903.

WILLIAM J. MAGIE, ORDINARY.

ALFRED REED, VICE-ORDINARY.

In re will of WILLIAM T. HODNETT.

[Filed May 26th, 1903.]

1. At the time of the instructions to Lord Cornbury, the English ecclesiastical courts had jurisdiction to require an executor, who had proved a will in common form, i. e., without notice to the persons interested, to prove the will in solemn form, i. e., upon notice to the persons interested.

2. The powers conferred upon Lord Cornbury respecting the probate of wills included the power to require an executor to prove his will in solemn form.

3. The powers thus conferred were possessed by the succeeding governors under royal appointment, and by the governors elected under the constitution of 1776, and were transferred by the constitution of 1844 to the chancellors, sitting as ordinaries in the prerogative court. The power to require probate in solemn form has never been taken away (if indeed it could be) by legislation. Nor does the fact that instances of the use of that power are not discoverable, indicate that it has been abandoned so that it cannot be now exercised in a proper case.

4. An executor may, of his own accord, prove his will before the ordinary upon notice to all parties interested.

5. A widow of a testator, who was a minor at the time the executor proved the will before the ordinary, and at the time of applying for relief, upon proof that there is fair ground for contesting the validity of the will, in respect to its execution, or the testamentary capacity of the deceased, or as to the will being the product of undue influence, presents a proper case for the exercise of the power to require the probate before the ordinary in solemn form on notice to all parties interested.

On petition, &c.

*Mr. Charles H. Hartshorne,* for the petitioner.

*Mr. Richard V. Lindabury,* for the executor.

MAGIE, ORDINARY.

On March 25th, 1902, a petition, signed by Thomas P. Fay and Emma S. Hodnett, was presented to the ordinary, praying that the last will of William T. Hodnett, deceased, and a codicil thereto, should be proved in the prerogative court and letters testamentary issued thereon to said Fay, who was appointed by said will executor thereof. The petition was sworn to by both of the petitioners on the day it was presented. Accompanying the petition was an affidavit made by said Fay, which, in the mode usual in such cases, made proof that no caveat against the probate of any will of William T. Hodnett, deceased, had been filed in the office of the surrogate of the county of Monmouth, in which county said Hodnett was domiciled and in which he died. Thereupon two persons, who were the witnesses to both will and codicil, were presented, and, being sworn, made out the execution of both will and codicil by the deceased in the ordinary mode. Probate was thereupon allowed, and letters testamentary were issued to said Fay, named in said will as executor, and he thereupon took the usual and prescribed affidavit.

On November 19th, 1902, a petition was presented to the ordinary by said Emma S. Hodnett, represented by her father and next friend, Charles A. Anderson. The petition, among

other things, asserted that Emma S. Hodnett was a minor, twenty years of age, residing with her said father in this state, and was the widow of said William T. Hodnett, deceased, who died at his residence, in the county of Monmouth, seized of considerable property; that Thomas P. Fay had for a long time been the legal, business and confidential adviser of said deceased, and continued to be such up to the time of the death of said deceased; that said Fay drew the said will and superintended its execution; that at the time it was executed the deceased was, by reason of disease, induced by dissipation, incapable of making a testamentary disposition of his property, and that the execution of the will did not conform to the requirements of the statute; that the codicil to said will was afterwards prepared by said Fay, and he also superintended its execution, and that its execution was not in accordance with the statute.

The petition further asserted, that after the death of petitioner's husband said Fay acted as her confidential adviser, and that she had signed the petition for probate of the will and codicil at his request, and because she inferred from such request that it was her duty to do so.

It was also therein charged that by the provisions of said will and codicil the said Fay obtains a large share of the property of the deceased; that said deceased had previously made a will, when fully capable of making a testamentary disposition of his property, in favor of the petitioner; that it was duly executed, and, if not revoked by the later will and codicil, ought to be probated.

The prayer of the petition is that the order admitting to probate the will and codicil and granting letters testamentary thereon should be set aside; that petitioner should be permitted to prove the facts asserted in the petition, and to show that the will and codicil were procured by fraud and undue influence; that the earlier will should be admitted to probate and that said Fay (who, it was charged, had obtained that will from its custodian) should be ordered to deliver it to the court, and that he should be restrained from performing any act as

executor under his letters testamentary, and that petitioner should have such other relief as she should be entitled to.

Appended to the petition was a copy of the earlier will mentioned therein, with an affidavit of a New York lawyer, to the effect that such a will, dated January 14th, 1901, had been drawn by him under instructions from the deceased, and had been duly executed by the deceased, and that the copy annexed had been taken from an office copy of the original will, retained by him in accordance with his usual custom, and that the original will had been delivered by him to a person acting under authority from said Fay. There were also appended the affidavits of petitioner and of a servant residing in the house at the time the will and codicil were executed, supporting and affirming the matters charged in the petition, and the affidavits of physicians respecting the condition of the husband at previous periods of his life.

Upon the filing of the petition, an order was made directing said Fay and the persons interested under said will and codicil to show cause before the ordinary, on December 9th, 1902, why the order admitting the will and codicil to probate should not be revoked and annulled, and why said Fay should not be ordered to deliver to the court the alleged prior will of January 14th, 1901, and why said Fay should not be restrained from performing any act as executor or trustee until the further order of the court.

The order to show cause was brought to hearing on December 16th, 1902, to which time the matter had been adjourned under a stipulation of counsel.

On December 16th, 1902, Fay, the executor, filed an answer to the petition, supported by his own affidavit that the matters therein stated were true. The answer substantially denied many of the allegations of the petition. No replication to the answer was filed, nor was there any request for a direction to take testimony upon the contested questions of fact. The order was brought to hearing upon the petition and answer, and the affidavits accompanying each of them.

On behalf of the petitioner, it was first contended that the

case disclosed a fraud perpetrated upon the ordinary, which ought to require and compel the vacation of the former action. The fraud charged was in the representation that the widow of the deceased, who was in fact a minor, incapable of acting for herself, had capacity to join in the application for probate. But the jurisdiction of the ordinary to grant probate of the will and codicil did not, in any respect, depend upon the application of the widow. If she had not joined in the petition, the application of the executor, upon the proofs submitted, would have justified the ordinary, under the practice and legislation presently to be considered, in proceeding to admit the will and codicil to probate. If, upon the petition in which she joined having been presented, it had been disclosed that she was a minor, that circumstance would not have deprived the court of jurisdiction. If, indeed, it had been further disclosed that Fay, who propounded the will and codicil upon an application in which he had procured her to join, knew that she was incapable of acting for herself, by reason of non-age, that circumstance might have caused the ordinary to pause and, perhaps, institute proper inquiry before allowing probate. But while the affidavits seem to properly make out that petitioner was in fact a minor, it is not made to appear that Fay knew that she was not of full age, and he swears in positive terms that he had no knowledge of the fact. There is therefore no conscious, intentional deception of the ordinary shown, and since it was not necessary that the widow should have joined in the application, if the facts now appearing respecting her infancy had been then disclosed to the ordinary, he could, and probably would, have proceeded to allow probate. My conclusion is that this ground will not support the demand for a revocation or annulment of the former action of the ordinary in allowing probate.

But it is next contended that the case discloses fraud of such a character as to justify an immediate vacation of the probate. The fraud on which reliance is placed for this demand consists, it is argued, in procuring a testamentary disposition of property from a man incapable of making it by one who occupied

a relation of trust and confidence, and that the disposition thus procured gave to this confidential agent and adviser a large share of the estate of the deceased, and that no sufficient proof appears to rebut the presumption that such disposition was obtained from undue influence arising from the recognized and admitted relation between Fay and the deceased. I do not deem it necessary to discuss this contention at length. It is to me a novel proposition that an order admitting a will to probate, made without objection and without deception of the court, may be vacated under an order to show cause, upon proof of the invalidity of the will because of incapacity, improper execution or undue influence. If, however, the proposition is well founded, this case is not within it. The allegations of fraud in the respects mentioned, if supported by affidavts, are met by positive denials. The case is not ripe for adjudication upon this claim, if any adjudication could be made.

But another contention made on behalf of petitioner demands consideration.

When the order to show cause came on for hearing, it was made to appear that notice had been given of an application by petitioner for an amendment of her petition, so that it might pray for an order or decree requiring the executor to prove the will and codicil, previously admitted to probate, in solemn form. Upon discussion, the application for such amendment was withdrawn, but petitioner's counsel insisted that if the ordinary found, upon the case presented, that petitioner was entitled to such relief, it should be granted under the general prayer of her petition. Much of the brief submitted for petitioner maintained the proposition that upon the matter before the court petitioner should have such relief, and that such relief is within the power of the court.

Upon consideration, I have reached the conclusion that if the case presented entitles petitioner to an order or decree requiring probate of this will and codicil in what is known as "solemn form," and if this court can make such an order or decree on a petition for such specific relief, it will be the duty of the court to afford relief upon this petition. That sort of relief is ger-

In re Hodnett.

mane to the specific relief prayed for therein, and therefore fairly falls within a general prayer for relief under the ordinary rules of equity pleading and practice.

The distinction between probate of wills in common and in solemn form, well recognized in the practice of the English courts of probate, seems not to have attracted much attention from our courts until the publication of the opinion of Chancellor McGill, sitting as ordinary, in *Straub's Case, 4 Dick. Ch. Rep. 264*. In that case a will had been admitted to probate by a surrogate without objection. After the time for an appeal from the surrogate's act had expired, the orphans court, upon a petition presented to it, alleging that the will was the product of fraud and undue influence, and praying that the surrogate's probate should be set aside, allowed an order to show cause why the prayer of the petition should not be granted, and, upon argument, discharged that order. Upon an appeal to this court from the order last named, the ordinary determined that the orphans court was without jurisdiction to initiate such a proceeding. But he proceeded to express an opinion that upon an application to the surrogate, although made after the time for an appeal from his act had expired, the surrogate would have jurisdiction to cite the parties interested to appear before the orphans court, which court would have jurisdiction to require an executor to prove the will in solemn form.

The decision of the ordinary in that case was affirmed by the court of errors, for the reasons given by him. *Scharer* v. *Schmidt, 5 Dick. Ch. Rep. 795*. But the approval of the decision was not intended to indicate approval of the opinion of the ordinary respecting the jurisdiction to require probate in solemn form, as was shown in the *per curiam* opinion shortly afterward delivered, in *Gordon* v. *Olds, 7 Dick. Ch. Rep. 319*.

Afterward, the opinion expressed by the ordinary, respecting the jurisdiction of the surrogate and the orphans court in such cases, was put to a judicial test. A will was admitted to probate by the surrogate of Essex county, without objection. The time for appeal had expired. Thereafter, parties interested applied to the surrogate for citations to the executors and all parties

interested, requiring them to appear before the orphans court of that county for a probate of the will in solemn form. The orphans court declined jurisdiction, and, upon an appeal to this court, the action of that court was approved and affirmed. The court in reaching that conclusion, felt bound to treat the opinion of the ordinary in the *Straub Case* as not correctly expressing the powers of the surrogate and orphans court in such matters. It was held that after a will had been admitted to probate by a surrogate, and no appeal had been taken within the time limited by statute, no jurisdiction existed in the surrogate to refer to the orphans court the question of probate in solemn form, and no jurisdiction existed in the orphans court to direct such probate. *In re Cartwright's Will, 51 Atl. Rep. 713.*

Upon appeal to the court of errors and appeals, the decree of the prerogative court was affirmed, for the reasons expressed in the opinion delivered in that court.

In delivering the opinion in the *Cartwright Case,* I expressly refrained from considering the power of this court in respect to probates in solemn form of wills produced and probated before the ordinary. The statutory jurisdiction conferred upon surrogates and orphans courts was deemed not to extend thereto after the time for appeal had elapsed. Whether the ordinary might not require a will proved before him to be again proved in solemn form, was not decided, and decision upon his power and duty in that respect is now required.

An examination of the practice of the English ecclesiastical courts, and of the courts which have succeeded to their jurisdiction in matters of probate, discloses the distinction made in those courts between probate in common and probate in solemn form. Originally a probate in common form was allowed upon the mere production of the will, accompanied by the affidavit of the executor that he believed it to be the last will of the deceased testator. Thereafter the executor could be required, under certain circumstances, to prove the will in solemn form.

In the third edition of *Consel's Practice of the Spiritual or Ecclesiastical Courts,* published in 1708 (*p. 10*), the practice under the powers of the court is thus stated:

"If any will be proved in common form (which is done by the sole oath of the executor), if any person have an interest in the administration of the deceased's goods (being perhaps prevented of his interest by the pretended will), he may force the executor to prove the will by witnesses, which, if the executor do not sufficiently prove, sentence is to be given that the deceased died intestate and that the probate of that will, so granted in common form of law, is to be annulled and revoked."

This probate was also called probate *per testes,* because the executor was required to produce evidence of the execution of the will, including the witnesses thereto, if any, upon notice to the parties interested, involving opportunity for them to appear and be heard. But that the distinction between the two forms of probate was not deemed to depend on the fact that the witnesses to the will were required to be examined for a probate in solemn form, which was not necessary to a probate in common form, seems clear. For, after the English Wills act of 1837 took effect, the allowance of probate in common form was upon an affidavit of one or more of the witnesses to the will, making out its execution in conformity with the requirements of the act. Yet, thereafter, probate in solemn form was frequently required. This course of practice indicated that probate in solemn form was resorted to, not because the witnesses to the will had not been produced and examined, but because the examination was wholly *ex parte,* no opportunity being given to any party interested to appear and make objection, and interpose with cross-examination, and the production of testimony. · So we are justified in the view that the real distinction between the two classes of probate consisted in the facts that one was allowed without notice and the allowance of the other was only upon notice to the parties interested, with opportunity to attend and be heard on the question of probate.

It is unquestionable that the jurisdiction in matters of probate and administration which existed in the English ecclesiastical courts at the time of the instructions to Lord Cornbury, in 1702, were by those instructions conferred upon the governors of New Jersey. That jurisdiction was exercised by the successive governors of the province or colony, and of the state, after it was established by the constitution of 1776 and the

PREROGATIVE COURT.    [65 Eq.

successful revolution of the United States. By the constitution of 1844 the same jurisdiction was transferred to the chancellor, whose appointment was thereby provided for, to be exercised by him as ordinary, sitting in the prerogative court. The jurisdiction of the governors over matters of probate was, in 1843, discussed by Pennington, ordinary, and traced to the instructions to Lord Cornbury. *In re Coursen's Will, 3 Gr. Ch. 408.*

The English ecclesiastical courts undoubtedly possessed power to require a will, which had been admitted to probate without notice to the parties interested, to be proved thereafter in solemn form upon notice to such parties. *Conset's Pr. 10; Trist. & C. Prob. Pr. 353; Browne Prob. Pr. 99, 275; 4 Burn Eccl. Pr. 196, 199; Pow. & O. Prob. Pr. 103.* Was that power conferred upon the successive colonial and state governors and transmitted to the chancellor sitting as ordinary? If the power now resides in the ordinary, in what case should it be exercised?

In his opinion in the *Straub Case,* Chancellor McGill fortified his position by declaring that the exercise of the power to require probate in solemn form, even after the lapse of a long period of time, was not oppressive upon the executor, because he might have proved the will originally in solemn form with notice to all parties interested. In the opinion delivered in the *Cartwright Case,* I pointed out that such a probate could not have been obtained by an executor of a will which was uncontested and which was offered for probate before the surrogate. But the power of an executor to prove a will before the ordinary in solemn form, and with notice, although no caveat has been filed and no contest made thereon, was plainly recognized in the English practice. It is thus stated by Conset:

"If an executor who is a stranger to the deceased (that is) no way related to him, have the greatest part of the deceased's goods bequeathed to him, and is doubtful lest the children or next of kin or widow of the deceased should commence suit against him for the future, he may, by virtue of that will, call the relict and children or next of kin of the deceased in special (if they think themselves any way interested), and all others whatsoever in general that pretend to have any interest in the last will and testament of the deceased, or in the administration of his goods, to come and see the will proved by witnesses, and lawful

In re Hodnett.

proof being made of this will and ·a definitive sentence passed for the validity of it, this will can never be made invalid or voidable thereafter (so as there be no nullity in the proceedings) though the testamentary witnesses die in the meantime. And this is frequently practiced." *Conset's Pr. 10; 4 Burn Eccl. Pr. 199.*

Citations in such cases were said to be mandatory and intimatory, because they not only cite parties to appear, but intimate that if they appear not, the executor will proceed to prove the will. *4 Burn Eccl. Pr. 27.*

The ancient practice seems still continued, for it is said that an executor may prove the will in solemn form, either of his own motion or in consequence of having been challenged to do so by a party interested adversely, and executors are advised to do so for their own protection. *Trist. & C. Prob. Pr. 363; Pow. & O. Prob. Pr. 103.*

This provision, in my judgment, has long been recognized in our legislation. Such recognition seems also to involve the inference that where the executor fails to prove the will thus, the power of the ordinary to require him to do so may, in any proper case, be exercised.

By section 2 of the act entitled "An act respecting the prerogative court and the power and authority of the ordinary," approved April 16th, 1846 (*Rev. Stat. p. 203*), it was enacted that probate of any will should not be granted by the ordinary until proof be made to his satisfaction that no caveat against proving such will had been filed in the office of the surrogate of the county where the testator resided at the time of his death, or that notice to all persons concerned had been given of the application to the ordinary for such probate. This provision is included in section 16 of the act entitled "An act respecting the orphans court and relating to the powers and duties of the ordinary and the orphans court and surrogates," approved March 27th, 1874 (*Gen. Stat. p. 2359*), and is now included in the act of the same title, approved June 14th, 1898. *P. L. of 1898 p. 718.*

In my judgment, this legislation has always permitted an executor who propounds his will before the ordinary to adopt one of two alternatives, viz.: (1) to submit the will upon

mere proof·that no caveat has been filed in the county in which
the testator had his residence at the time of his death, or (2)
to give notice to all persons concerned of the application for
probate. If he adopts the former. alternative and satisfies the
ordinary that no caveat has been filed, he may then propound
the will and obtain his probate without having given any
notice. If, however, a caveat has been filed, the ordinary would
not proceed to allow probate except upon notice. But the
alternative provision is so general as to indicate plainly that
it was intended to permit the executor to proceed for probate
upon such notice, whether a caveat had been filed or not. Upon
this construction of the act, it follows, in my judgment, that
any person noticed to attend the probate must be admitted to
cross-examine the testamentary witnesses and to produce evi-
dence on the matter of the will, and a contest against the will
could be maintained by him. It also follows that any person
who has been noticed to attend and has refrained from attend-
ing, or who has attended and made no contest, would be there-
after estopped by the order admitting the will to probate from
any further contest, at least on matters then apparent or dis-
coverable. If any party concerned, and noticed to attend, was
an infant, there can be no doubt, I think, that the incidental
powers of the ordinary would extend to the appointment of a
guardian *ad litem,* by· whom the infant might appear, pursuant
to the usual practice of courts having equitable and ecclesiastical
jurisdiction. The notice would seem to be necessarily personal,
there being no provision, as there is in some states, for sub-
stituted or constructive notice, by publication, &c. *Am. & Eng.
Encycl. L. (1st ed.) 180.*

This sort of probate on notice, in cases where no contest was
made over the will, as has already been stated, was recognized
practice of the English ecclesiastical courts, and is also a prac-
tice of the present probate courts. Executors might prove a
will in solemn form, either of their own motion or in conse-
quence of having been challenged to do so by a party interested
adversely. Executors are advised to thus prove their will for
their own protection. *Trist. & C. Prob. Pr. 363.* The present

In re Hodnett.

requirements of the probate court for obtaining a decree for probate in solemn form in an uncontested action are set out in the same book (at *p. 352 et seq.*), and it is therein declared that the recognized difference between a probate which has been granted in common form and a probate which has been granted in solemn form, is that the former is revocable, and the latter, provided proper precautions have been taken, is, subject to one exception, irrevocable. The one exception seems to be the after discovery of a will later in date than that admitted to probate. *Trist. & C. Prob. Pr. 355.* Another exception is said to be where the decree has been obtained by fraud or collusion. *Pow. & O. Prob. Pr. 103.*

Whether or not the ordinary did not possess power to permit probate of an uncontested will, on notice, before the act of 1846, above cited, need not be determined. But, as it was a practice of the ecclesiastical courts of England, whose powers were conferred on the governors of the colony and state, it would seem probable that such legislation, adopted shortly after the period when the chancellor became ordinary under the constitution of 1844, was rather a regulation of a practice recognized as existing.

At the June term, Chancellor Halsted had under consideration a case presenting the following features: A will of a non-resident of this state had been admitted to probate by him, sitting as ordinary, and without notice. Afterward a petition was presented to him, praying for the vacation of the probate thus granted. An order upon the executor, to whom letters testamentary had been issued thereon, to show cause why the order admitting the will to probate should not be vacated, was made and brought to hearing upon the petition and affidavits made in opposition. The ordinary reached the conclusion that the probate should be vacated, upon a consideration of the terms of section 2 of the act of 1846, above cited. As it appeared that the testator was not a resident of this state at the time of his decease, and it was obvious that the proponent of the will could not have been entitled to probate under the first alternative proof, viz., that no caveat had been

filed with the surrogate of the county where the testator resided at the time of his death, the ordinary held that it was essential for the proponent to have made proof under the second alternative, viz., that notice had been given to all persons concerned of the application for probate. As it further appeared that no such notice had been given, the conclusion was that the probate had been improperly granted, and it was vacated. *In re Lawrence, 3 Hal. Ch. 215.* I have examined the record of the order made by the ordinary in that cause and find that, in addition to vacating the probate previously granted, it was further ordered that if application for probate of the will should be afterwards made, it should be upon notice.

I have been unable to discover any other case involving the construction of the legislation above referred to in these respects, or throwing any light on the question now under consideration, until the opinion expressed in the *Straub Case.*

This examination seems to indicate that the power to order a will which has been admitted to probate without notice to be afterwards proved with notice, has either not been exercised, or has been exercised in rare instances, which have not been contested and have escaped notice. But I am unable to draw therefrom the inference that such power has never existed in the ordinary, or that it has been so abandoned as to prohibit its exercise in a proper case. That such power existed in the English ecclesiastical courts, and was among those powers conferred upon the ordinary of the colony and state, I deem to be entirely beyond dispute. That it has not been (if, indeed, it could be) taken away from the ordinary by legislation, I deem equally clear. Its disuse does not show abandonment, if it could thus be abandoned.

For these reasons I deem myself possessed of authority to require an executor who has proved a will before me without notice, to prove the same will with notice to all the parties whenever a proper case for such action is presented. The remaining question is, what is a proper case requiring such action?

This question, if thoroughly considered and completely

In re Hodnett.

answered, would involve much that would be entirely unnecessary to the decision of this case. It would require me to trace the limits and fix the bounds of my jurisdiction in this regard. For example, Chancellor McGill, in the *Straub Case,* declared that the demand for probate in solemn form might be made at any time within thirty years. It is said as to the present English practice that any party whose interest is adversely affected by a probate granted in common form, may, without any limitation of time, call it in and put the party who obtained it, or his representative, upon proof of the will in solemn form. *Trist. & C. Prob. Pr. 353.* But there is legislation in England protecting an executor against payments, &c., made before the revocation of the probate under that practice. The ancient practice seems to have considered a time to be limited, according to Swinburne, to ten years, but according to Dr. Godolphin, to thirty years. *4 Burn Eccl. Pr. 199.* Obviously, I ought not to determine in this case the extent of time within which such relief may be sought, for if a party seeking relief comes without laches, as the petitioner does, the question of the extent of the limitation of time is of no consequence. Nor is it necessary in this case to definitely determine what kind or what amount of proof is requisite to move the court to grant such relief. Under the English practice it would seem that the court exercised its power to require probate in solemn form almost as a matter of course. When the probate was granted upon the mere affidavit of the executor that he believed the instrument propounded was the last will of the decedent, there would seem to be a reason for such a practice, which would not apply where probate, though without notice, is only granted upon proof of the instrument as a will. Yet, in many cases, ground was shown for the exercise of the power. Under our practice, pursuant to which a contest may be raised by anyone interested by caveat or appeal, I think probate in solemn form ought not to be compelled, except upon some good ground shown. It is manifestly unnecessary to prove that the probate previously granted had been improperly granted by showing that testator did not in fact possess testamentary capacity, or that the will was in fact the

product of undue influence, &c. It will be sufficient to justify the ordinary in requiring probate on notice if there is made to appear to him a fair ground for contesting the validity of the will in respect to its execution, or the testamentary capacity of the testator, or as to the will being the product of undue influence.

It is equally unnecessary to decide in this case who may apply for probate in solemn form. If any person, who is *sui juris,* has knowledge of the death of the testator and of grounds for contesting his will, or might by due diligence have discovered such grounds, and has neglected to caveat against probate being granted, it could hardly be conceded that he could afterward be heard to demand that an executor should be required to reprove the will on any such grounds.

Applying these views to the case in hand, I think the power to require probate in solemn form ought to be exercised. Petitioner, the widow of the deceased, appears to be a minor. If the executor had elected to prove the will on notice to all persons concerned, he would have been obliged to give notice to her, and, unless some person appeared for her, to procure the appointment of a guardian *ad litem* for her, who would have represented her in the proceeding. She is therefore a person concerned, who may now apply for this relief by a next friend, and it cannot be denied that the application has been made within a reasonable time.

The facts asserted and admitted, in my judgment, justify the conclusion that a case for relief of this nature is presented. The will and codicil were admittedly drawn by the legal adviser and confidential agent of the deceased. Testator is admitted to have been addicted to the excessive use of intoxicating liquors, as a result of which he suffered many attacks of *delirium tremens,* and from time to time was treated in sanitariums. There is evidence of his condition, at or about the time the will and codicil were executed, sufficient to justify inquiry as to his capacity. There is further evidence respecting the mode of execution of the will and codicil sufficient to justify the examination of the persons present at the execution, and particularly the persons who signed as testamentary witnesses.

In re Hodnett.

It is not improper to add that these considerations are re-enforced by the admitted fact that petitioner, under a previous will, was given a much larger share of her husband's estate, and under the will and codicil here in question her share is much diminished and a large share of the estate is given to testator's friend and adviser, who drew and superintended the execution of these papers.

My conclusion, therefore, is that the executor in this case should be required to prove this will and codicil in solemn form, upon notice to all parties concerned. A convenient practice in that regard is that now in use in the English probate courts, whereby the executor is cited to bring in his probate and to show cause why it should not be revoked and the will pronounced invalid. *Trist. & C. Prob. Pr. 367.*

An order will be made continuing the restraint upon the executor, and directing him to bring in his probate on a day fixed, of which he shall give notice to all parties concerned, and on that day to proceed to prove the will as if propounded upon notice.