The complainants, the executrices and trustees under the last will and testament of Richard Reininger, deceased, bring this bill of complaint seeking construction of his will and instructions with reference to the following provisions:
"Eleventh: It is my wish and I direct that my shares of stock in Reininger Securities, Inc., shall not be sold but the same shall be held by my Executors and Trustees as part of my trust estate and divided among the shares to be set aside for each of my daughters named in paragraph NINTH (C) of this Will and their children."
"Twenty-second: If any devisee, legatee or beneficiary under this Will shall contest the validity or object to the probate thereof, or attempt to violate the same or to alter or change any of the provisions thereof, such persons shall thereby be deprived of all beneficial interest thereunder and of any share of my estate, and such person shall be excluded from taking any part of my residuary estate, and the same shall be divided equally among all other persons entitled to take such residuary estate."
Richard Reininger died on February 5th, 1946. His will dated June 19th, 1945, was probated and the complainants qualified thereunder as executrices and trustees. In his will testator made specific bequests totaling $29,998, set up a trust fund for a named grandchild for life in the amount of $7,000, *Page 605 
and devised and bequeathed the residuary of his estate to the complainants, in trust, until terminated 17 years after the death of his last surviving daughter, when the corpus of the trust is to be divided equally among the grandchildren then living, perstirpes, and not per capita. He directed that the principal of the trust estate should be divided into ten equal parts, one or more of such shares to be held for his six daughters, as therein directed. During the term of the trust the net income from the shares are to be paid to the daughters, for life, and then to their children. In addition the will provided for the payment out of the principal of the trust estate of an aggregate of $5,000 annually (commencing two years after the death of testator), to his daughters and their issue, until the termination of the trust. It is estimated from the ages of the six daughters of decedent, who are all alive, that the trust will continue for over 45 years.
The total estate at the time of testator's death was appraised for the purposes of the federal estate tax at $865,931.44. The estate is made up of bank accounts, savings bonds, life insurance and personal property amounting to $29,579.36, a note due from Reininger Securities, Inc., for $170,000, and 2,377 shares of stock in the Reininger Securities, Inc., of an adjusted book value of $671,716.43 ($282.59 per share). Estate debts are $47,249.71, plus a contingent liability of $5,000 for possible income taxes, funeral expenses of $1,853.82 and administration expenses estimated at $44,000. The executrices are directed to pay all estate, succession, inheritance and other taxes. The federal and state taxes have been computed to be approximately $220,000, but as the returns filed have not been audited, it is not unreasonable to assume that the tax will be between this amount and $260,000. Totaling all these sums the executrices have an estimated net estate of between $510,000 to $550,000.
Under an agreement made by the decedent with his wife in his lifetime, the estate must make annual payments of $4,500 to his widow for life. She was 78 years of age at the time of testator's death. This agreement was secured by a bond made by decedent and the Reininger Securities, Inc., in the sum of $75,000. *Page 606 
The cash presently on hand or that may be realized from the assets of the estate other than the shares of stock of Reininger Securities, Inc., is approximately $15,000. The present obligations of the estate are estimated to be between $315,000 and $355,000, which must be met primarily from that part of the estate represented by the Reininger Securities, Inc., stock.
The Reininger Securities, Inc., is a closed corporation and was used as a holding company for real estate and mortgage investments and shares of stock of two other corporations. The total number of shares of stock in Reininger Securities, Inc., issued and outstanding is 2,384, of which the testator held 2,377 shares, while of the remaining seven shares three are held by Lillian R. Shelley, three by Laura Wiss and one by Frederick M. Shelley, the husband of Lillian R. Shelley. Lillian R. Shelley and Laura Wiss are two of the executrices and trustees of the estate.
The complainants, in accordance with the provisions of the will turned over to themselves, as executrices, the 2,377 shares of stock of said corporation representing over 99% of the total stock, and in such fiduciary capacity have exercised the rights of stockholders of said corporation and are the only directors and officers of said corporation.
The balance sheet of said corporation dated December 31st, 1946, discloses cash in banks of $167,238.63, mortgages of $103,992 (all of which mortgages with the exception of three were paid at the time of the hearing), United States Bonds of $74,000, stock in Newark Rivet Works of the value of $200,000, stock in Roosevelt Securities, Inc., valued at $160,000 (representing a 50% interest in real estate), real estate valued at $354,826 and miscellaneous deposits of $5,140.
The capital represented by the total stock issued amounts to $595,000 plus a surplus of $295,811.79.
Complainants joined as party defendants all the life tenants and all living residuary legatees under the will, both individually and as representing persons not in esse, who may acquire an interest in the estate. The answer on behalf of the guardians ad litem and on behalf of some of the defendants took no issue with the bill and submitted the matter to the court. *Page 607 
To meet these current obligations herein outlined several methods come to mind. The first would be to declare a sufficient dividend on the stock to realize a sum, after income taxes, large enough to satisfy present obligations of the estate. The objection to this is that the corporate surplus is only $296,000 which, after taxes, would return a balance of only $64,000 to the estate which would cripple the corporation, decimate the assets of the estate and still fail to meet even estate taxes. Another method suggested would be to retire stock and thus invade the capital of the corporation which would result in a serious depletion of the value of the estate in the approximate amount of $430,000 and would also violate paragraph eleven of testator's will.
It is suggested that in order to realize the necessary funds the practical method would be to dissolve the corporation, thus freeing all net assets for the use of the executrices and trustees to meet the obligations of the estate and to establish the residuary trust thus eliminating all double taxes, both present and future with the exception of a negligible capital gains tax.
I am of opinion that dissolution of the corporation is not unconscionable as motivated by a desire to avoid taxes. It was held in Gregory v. Helvering, 293 U.S. 465, 469;79 L.Ed. 596, "* * * The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. UnitedStates v. Isham, 17 Wall. 496, 506; 21 L.Ed. 728, 731; SuperiorOil Co. v. Mississippi, 280 U.S. 390, 395, 396; 74 L.Ed. 504,507, 508; 50 S.Ct. 169; Jones v. Helvering, 63 App. D.C. 204;71 Fed. Rep. 2d 214, 217. * * *"
I know of nothing in the law or in equity which requires executrices and trustees to adopt that of several alternative methods of handling an estate which returns the greater sum in taxes to the government. Moreover, failure of the executrices and trustees to meet the taxes due would result without a doubt in a forced sale of the corporate stock by the government resulting in liquidation of the corporation, and so the wish of the testator as appears by paragraph eleventh *Page 608 
of his will to preserve the corporation inviolate will nevertheless be defeated.
Reininger Securities, Inc., as already mentioned, was a closely held corporation except for directors' qualifying shares, owned by the testator. It was a family corporation so to speak bearing the owner's name, and I am of the opinion that Reininger had in mind when he prohibited the sale of the stock that he wanted to make certain that control would not pass from his family. By his will the executrices and trustees while directed to hold the shares of stock are not forbidden to dissolve the corporation. Dissolution would not only preserve the estate assets, but leave them in the family control as the testator wished. Again, the direction in the first paragraph of his will to pay his debts and expenses is also a legal requirement and under the evidence before me necessitates a violation by the executrices and trustees of testator's direction to hold the stock. Certainly a decree forbidding dissolution under the circumstances of this case could not preserve all the shares in the hands of the executrices and trustees.
The primary intent of this testator as appears from an examination of the four corners of the will was to provide for his family and he prescribed the method by which his intention should be accomplished. If because of the circumstances as outlined above his chosen method cannot be accomplished, the entire scheme of his will, taken as a whole to provide for his family, should not, for that reason be permitted to fail if a method to preserve the same exists. Again, he gave his executrices and trustees broad powers when in the final paragraph of his will he said:
"I give my Executors and Trustees full power and authority to mortgage, manage, lease, sell, dispose of and convey any and all property, real or personal, of which I may die seized or possessed, or which may become part of my estate, upon such terms and conditions as they shall deem for the best interest of my estate * * *."
The power to manage the property includes the power to vote the stock freely, and the closing admonition to the executrices and trustees was that they may do so "upon such terms and conditions as they shall deem for the best interest of my estate." *Page 609 
I am inclined to the belief that the direction not to sell stock of Reininger Securities, Inc., in paragraph eleventh was included for the purpose of preserving family control of the corporation and was intended to apply only as long as the stock and the corporation exists. Assuming the corporation desired to amend its certificate of incorporation to change the nature of its business, or its name, or the type of stock, or to meet any other valid changes it appears to me that there would be no question that such action would not be prohibited by testator's will and that the fiduciaries as directors could vote for such changes and as stockholders approve such amendments to the charter.
It is fundamental in our law that a person may dispose of his property by will as he sees fit unless it is in contravention of law. Judicial applications of this principle require the payment of the decedent's obligations before his bounty can become effective. The first paragraph of Reininger's will, in directing the payment of testator's debts, acknowledges the obligation the law imposes upon all executors to pay debts. Since the advent of death taxes, the law has imposed upon the personal representatives of decedents the obligation to pay such taxes. In this instance too, the testator, mindful of the existence of such burdens on his estate, has directed these taxes to be borne by his residuary estate. Before the residue can be determined, the pecuniary legacies must also be paid. "In the absence of any directions in a will as to the time or manner of the payment of the residuary legacies, the general rule is that the residuary legatee has a right to insist that before the end of the first year after testator's death the executors shall, if possible, convert all the assets into money, pay the debts, funeral and testamentary expenses, and hand over the clear residue to the residuary legatee." Liberty Title and Trust Co. v. Stevens,115 N.J. Eq. 506 (at p. 511); 171 Atl. Rep. 631. By statute this period has been extended to 18 months by R.S. 3:26-1. The residuary estate is to be held in trust and by paragraph eleventh, the stock of Reininger's Securities, Inc., is to be held as part of this trust with sale thereof expressly prohibited.
To carry out the obligations imposed by the will and by *Page 610 
law, the executrices in order to raise the necessary money for debts, taxes and pecuniary legacies must resort to the stock of Reininger Securities, Inc., an asset they are prohibited from selling. The beneficiaries of the estate dare not relieve the situation by consenting to a sale because of the forfeiture clause in the will. Cf. In re Simson, 123 N.J. Eq. 388;196 Atl. Rep. 451. The situation before the court is not novel; numerous decided cases reveal largess on the part of a testator with inadequate funds to pay on the same generous scale that the will appoints. In such instances the law provides the relief without which the testator's intentions could not even be approximated. Thus legacies and annuities abate in certain order, the residuary legacies abating first. Provident Trust Company of Philadelphia
v. Osborne, 133 N.J. Eq. 518; 33 Atl. Rep. 2d 103; LibertyTitle and Trust Co. v. Stevens, supra; Quill v. Schlichter,121 N.J. Eq. 149; 188 Atl. Rep. 237. The prohibition against sale of the stock is attached to the residuary gift and must be held to abate, for otherwise debts, taxes and the pecuniary legacies entitled to priority of payment by law as well as the express provisions of the will cannot be satisfied. Such a result is not the testator's intention; the prohibition against sale of the stock is insufficient to overcome the testator's acknowledgment of the requirements of the law and must be held to be operative only in the event his estate is sufficiently large to satisfy the aforementioned provisions.
It is to be noted that the executrices and trustees are the complainants in this suit and that they are also beneficiaries under the will against whom the forfeiture clause operates. In filing the bill for instructions and for construction of the will, they acted in their official capacity as executrices and trustees. The law will not impose upon a fiduciary acting in the proper discharge of his duty a penalty affecting his individual interest in the subject-matter; such a rule would paralyze official functions to the detriment of the cestuis.
Nor has any beneficiary including the executrices in their individual capacity as beneficiaries been guilty of any act in this proceeding to disqualify them as beneficiaries under the will. In Federal Trust Co. v. Ost, 120 N.J. Eq. 43, we held (at p. 65): *Page 611 
"It seems to me that when the language of a will is under investigation and the testator's intention is being inquired into a beneficiary may freely speak, when brought into the cause, without incurring the penalties provided in the will against a contesting beneficiary, even though while so speaking the beneficiary contends for a construction which will by operation of law render provisions of the will invalid. The court is obliged to construe the will in accordance with legal principles. Those only who have an interest in the will have the disposition to assist the court in its labors. If they must be silent, for fear of forfeiture of benefits given them by the will, the court will be hindered by the command of the testator in reaching a correct result. For assisting the court in furnishing facts and presenting arguments the beneficiary should not be penalized, where that service comes not from a volunteer but from an invitee. It was said by the Supreme Court of Connecticut inSouth Norwalk Trust Co. v. St. John, 101 Atl. Rep. 961, that: `One of the claimed exceptions to the general rule of forfeiture is not an exception. If the action of a legatee is merely one to determine the true construction of the will, or of any of its parts, the action could not be held to breach the ordinary forfeiture clause, for the object of the action is not to make void the will, or any of its parts, but to ascertain its true legal meaning. Black v. Herring, 79 Md. 152;28 Atl. Rep. 1063; Schoul. Wills (5th ed.), § 605. The appeal taken from the decree of the probate court did not, as we have before pointed out, raise the question of the construction of this will.'"
To the same effect is Bottomley v. Bottomley, 134 N.J. Eq. 279; 35 Atl. Rep. 2d 475; Provident Trust Company ofPhiladelphia v. Osborne, supra.
In Henry B. Chews Appeal, 45 Pa. St. 228, the testator provided "I earnestly recommend to my children, devisees and legatees to agree among themselves in all things pertaining to the division and distribution of my estate as provided in my said will and codicils; but in case any one of my said children, legatees or devisees shall dispute, contest or litigate any devise, bequest or other testamentary provisions contained in my said will or any codicil thereto, or shall seek *Page 612 
by any proceeding at law or otherwise to invalidate my said will or any part thereof or any codicil thereto," then in any such event the beneficiary shall forfeit his interest in the estate, and the other beneficiaries were to take by way of gift over.
One of the decedent's children denied that the executors had a right to sell certain lands and claimed as against the estate the right to possession of a portion of the homestead. This position caused the executors to bring ejectment against him. The same beneficiary further refused to deliver cash books and other records of the estate to the other co-executors on his dismissal as one of the executors by the court. In considering whether the conduct of the beneficiary disentitled him to share in the estate, the Supreme Court of Pennsylvania held that the condition was aimed at a dispute regarding division and distribution between the children. The denial of the executors' right to sell the lands did not amount to a dispute of any provision by any legatee, the court saying "it disturbed no share, it denied no right of distribution as provided by the will in favor of any legatee or devisee; it was but an attack on the administration of the estate in the manner and, perhaps, by the parties administering."
As to the claim to possession of a portion of the homestead, the court said that the beneficiary "claimed under a supposed election. * * * He did not dispute the provision in favor of his co-devisees by making it. * * * The prohibition did not mean to prevent the assertion of supposed legal rights not amounting to denial of the devises to others, by any of the devisees, or by the executors." It is difficult to perceive a distinction between a suit questioning the existence of a power of sale and a suit questioning the validity of a prohibition against sale. Both relate to the power of the executors in the administration of the estate and do not affect the rights of distributees as provided by the will in favor of any legatee or devisee but on the contrary effectuates such rights as the will establishes. Undoubtedly, as the court said in Chews Appeal, no provision can be formed to oust the supervisory power of the law over such conditions and limitations, to control them within their legitimate sphere, which is generally to prevent vexatious litigation. *Page 613 
In Girard Trust Co. v. Schmitz, 129 N.J. Eq. 444;20 Atl. Rep. 2d 21, Vice-Chancellor Berry held that a forfeiture clause in a will is to be strictly construed against a forfeiture and reasonably construed in favor of the beneficiary and that forfeiture will not result from the violation of a void condition. If the prohibition against sale of the stock were construed as within the intention of the testator in view of the cash position of the estate, it must be declared void for to enforce it would compel the executor to violate the obligations imposed by law to pay debts, taxes, funeral and testamentary expenses. It is not necessary to go to such extremes, however, for it is apparent from the will itself that the prohibition against sale of the stock was not intended to be operative in the light of the directions to pay debts, taxes and pecuniary legacies.
The circumstances of this case reveal no violation of the forfeiture clause disqualifying any party to the suit from any benefits flowing to him or her under the will. Sale of the stock not being prohibited the executrices may either sell all of the stock or so much of it as they deem necessary to raise the funds they require or in their discretion effect any other form of realization on this asset such as liquidation of Reininger Securities, Inc.