Hermann Simson died, resident in New Jersey, August 27th, 1934, survived by his mother, his wife, his son Walter *Page 389 
and his married daughter Eleanor. He left a will, which contained the following clause (1):
"Whereas, I have been estranged from my wife and children for many years last past, and each of my said children is now of age, and in a position to be self-supporting, I hereby give and bequeath to my wife, Emily Jane Simson, the sum of Ten Thousand ($10,000) Dollars. Said legacy is bequeathed, however, on the express condition that neither my said wife or any of my children shall take steps to contest this will or otherwise attack its validity, and that none of them shall claim or assert in any court that I am a resident of or domiciled elsewhere than in the State of New Jersey. In any such event, said bequest of Ten Thousand ($10,000) Dollars shall not be paid to my said wife, but shall be paid to Miss Barry Brady, now residing at 2 Horatio Street, in the Borough of Manhattan, City of New York."
He made no provision for either his son or daughter. Aside from the above legacy and a devise and bequest to his mother, his entire residuary estate was devised and bequeathed to the petitioner, Barry Brady, a non-relative, who was also named executrix.
The will was offered for probate August 29th, 1934, and on the 6th day of September, the son, Walter, filed a caveat with the surrogate against the probate of the will. Thereafter, on September 10th, the surrogate issued citations commanding the proponents to appear before the orphans court on November 9th to answer unto the caveat; and on September 11th, Barry Brady and another were appointed administrators pendente lite.
On November 26th, 1934, all of the parties in interest in the estate entered into a written agreement which recited the prior proceedings and that it was the desire of the parties "to compromise and settle all controversies with respect to the validity of the will and their rights and interests in the estate of the decedent," and which provided that "in consideration of the premises" and the mutual covenants in the agreement, the son would withdraw his caveat and the widow and each of the children would co-operate in the withdrawal of the caveat and in securing the probate of testator's will, and that there should be paid out of the estate, not only the *Page 390 
$10,000 legacy to the widow, but also an additional $2,666.67, also the sum of $12,666.66 each to the son and daughter, and an $8,000 fee to their counsel.
By decree of the orphans court of Union county, December 7th, 1934, this agreement was approved and confirmed; and the said payments therein provided for were duly made. The decree also discharged the administrators pendente lite, admitted will to probate and granted letters testamentary to Barry Brady as sole executrix thereof.
The commissioner's conclusions that the legacy of $10,000 had been forfeited; that said legacy passed under the terms of the will to Barry Brady; and that said transfer was chargeable with a tax at the rate of 8%, are in issue on this appeal.
The subject matter of the controversy is the sum of $750, the difference between the tax on a transfer of $10,000 to a widow at the rate of 1%, less a $5,000 exemption, and the tax at the rate of 8%, without exemption, on a transfer of that amount to a non-relative. P.L. 1909, c. 228, as amended by P.L. 1934, c.244, p. 698, at pp. 702, 704.
It is well settled that testamentary provisions for forfeiture are valid in this state; and that forfeiture results from a breach of such condition. Hoit v. Hoit, 42 N.J. Eq. 388,7 Atl. Rep. 856. The commissioner, having concluded that the legacy had been forfeited, assessed the inheritance tax on the transfer made under the provisions of the will, — not under the terms of the settlement agreement. In re Gould's Estate,105 N.J. Eq. 598, 148 Atl. Rep. 731; In re O'Neill, 111 N.J. Eq. 378,162 Atl. Rep. 425.
Petitioner, denying a forfeiture has here been effected, maintains that the probate proceedings never progressed beyond the stage of the filing of the caveat and that such filing does not, of itself, constitute a "contest" or "attack" on the validity of the will.
Under New Jersey probate practice, the will is admitted to probate by the surrogate in a clear case. It is only where "doubts arise on the face of the will, or a caveat is put in against proving a will, or a dispute arises respecting the existence of a will" that jurisdiction is removed from the *Page 391 
surrogate and lodged with the orphans court of the county. (3C.S. sec. 13, p. 3816, as amended). In either of the cases above cited, the surrogate is forbidden to act upon the application, but is required to issue citations to all persons concerned, returnable to the orphans court, and jurisdiction is conferred upon that court to hear and determine the matters in controversy.Murray v. Lynch, 64 N.J. Eq. 290, 51 Atl. Rep. 713. Citations were issued in the case at bar, and thereafter the proceedings were properly in the orphans court, where the administratorspendente lite were appointed.
Petitioner contends that the mere act of filing a caveat does not of itself either constitute or prove any contest by the caveator against the will or its validity; that it is simply an act whereby the caveator procures his legal right that the probate proceedings be heard before the orphans court without any contest against the probate being made therein by the caveator; but recognizing that there is no decision of the courts of this state upon the specific question, cites authorities in other jurisdictions which hold that the mere filing of a caveat does not, without more, amount to an attempt to defeat the will, within the meaning of a clause providing for the forfeiture of the bequest to a contestant. (See 5 A.L.R. 1373.)
Respondent argues, however, that in view of the determination in Kayhart v. Whitehead, 77 N.J. Eq. 12, 76 Atl. Rep. 241,
there is at least serious doubt that such a rule should be adopted in this state. In that case, involving a forfeiture clause, caveat and contest before the orphans court by one legatee, with the assistance of another, who filed an appeal to the prerogative court as well, Emery, V.O., held that the merefiling of the appeal was of itself an attempt to prevent probate of the will. Respondent argues that if such an appeal, (subsequently dismissed for lack of prosecution), constituted an attack upon the probate of a will, it logically follows that the filing of a caveat also constitutes a contest; for an appeal and a caveat both effect a transfer of the litigation from one court to another; and as pointed out in Kayhart v. Whitehead,supra, the result in either instance is to *Page 392 
stay probate. The opinion also repudiates the rule of probabiliscausa litigandi in this field.
The soundness of this argument seems questionable at least. Obviously an appeal from a decree which adjudicates that a certain document is the will of testator, is a contest against the probate of that very document. On the other hand, the caveat filed with the surrogate, in usual form (as presumably was the case here), did not express an attack upon, or effort to prevent the probate of, the particular paper writing which is involved in the instant case; it merely objected to the probate of "any
paper writing purporting to be the last will and testament of Hermann Simson, until examination and decree thereon by theorphans court."
However, the result in the present case does not rest upon such a narrow issue. Assuming that the filing of the caveat does not in itself and without more, evidence that there was a contest against this will, there is nevertheless additional evidence in the record sufficient to establish that fact.
It is quite possible that the contents of the order appointing administrators pendente lite and the proceedings on which such order was based, might afford adequate evidence that the caveat was in fact a part of a contest against any probate of this will; but those proceedings do not appear in the record, — and the appointment of an administrator pendente lite does not necessarily evidence that there is a contest over the validity of the will. Such appointment may also be made where the appointment of an executor (or a general administrator) is delayed for any reason. [*]Davenport v. Davenport, 68 N.J. Eq. 611,60 Atl. Rep. 379.
That there was a contest by the son, participated in by the wife, against this will and an attack upon its validity, — that the filing of the caveat was a step in that contest and attack, — is evident from a consideration of the subsequent proceedings, including the execution and consummation of the settlement agreement.
That agreement, to which the widow and children were parties and which was executed by all of them, expressly states that it is made in order to "compromise and settle all controversies *Page 393 
with respect to the validity of the will and the rights and interests (of the parties) in the estate of decedent," (italics supplied). It provides that there shall be paid out of thedecedent's estate to the widow $10,666.67 "in satisfaction ofher distributive share in decedent's estate," (the will gave her only $10,000); and to the son and the daughter, each, a similar amount as their respective similar "distributiveshares," (the will gave nothing to either); and to the attorney for the widow and children, $8,000. It provides that in consideration of these payments the widow and children acknowledge that this particular will is the valid will of decedent; and it further provides that if those payments are not made, this acknowledgment shall be void and the order probating the will shall be void.
To the decree granting probate, entered by the orphans court consequent upon this agreement, were appended the express written consents of all these parties by their proctors, including the widow and the children; and this decree recites that the caveats filed by the son were "against the probate" of this particular will; it further recites that there were disputes concerning the probate of this particular will and concerning the distribution of decedent's estate and that those disputes were settled by agreement and that said decree is entered in accordance with that agreement; it decrees that the said settlement (i.e., of the said disputes) be approved, — that the extra payments so agreed on be paid out of the decedent's estate, as their respective"shares in the distribution of decedent's estate," — that the will be probated and letters testamentary issued thereon.
It is perfectly obvious from all this that the son did, — and the widow and daughter also participated therein, — "take steps to contest this will," and "attack its validity;" that they not only "took steps," but as the result of those steps successfully accomplished a disposition of some $30,000 or $40,000 of the decedent's estate entirely different from that desired by the testator and provided by his will, — accomplished the obtaining these sums for themselves in direct contravention to the testator's desire and the direction of his will. (It is further *Page 394 
to be observed that there is in the proof no testimony or affidavit by any of the parties involved, that there was in fact no such a contest; there are affidavits to the effect that the wife did not contest the will or participate in any contest.) This seems sufficiently clear to need no support by citation of prior adjudication. It may be noted, however, that in In reHite, 155 Cal. 436, 101 Pac. Rep. 443 and Tate v. Camp,147 Tenn. 137, 245 S.W. Rep. 839, it has been expressly held that opposition to probate, subsequently settled for valuable consideration, constitutes a "contest of the will" or "attack on the validity" thereof. See also In re Cronin's Will,257 N.Y.S. 496.
It is concluded that the son, — and, (although this is not essential), also the wife and daughter, — did take steps to contest the will or attack its validity, within the meaning and intent of the testamentary provision in that behalf; that as the result thereof, the legacy of $10,000 to the wife passed under the will to Barry Brady instead of to the wife; that although the wife received that sum, it was received by her not by testamentary transfer to her but by transfer from Barry Brady after testamentary transfer to the latter; that the tax in question was correctly computed and levied and should be affirmed with costs. *Page 395