The bill was filed by Harold Alper, a son of Morris Alper (now deceased), against his sister Theresa Alper. Originally the bill sought to have set aside a certain deed of conveyance *Page 548 
whereby in May of 1945 Morris Alper conveyed to his daughter Theresa a dwelling house situated at 36 Van Ness Place, in the City of Newark. The bill charges that the conveyance was the result of undue influence exerted by the grantee, the daughter Theresa. Joined as co-defendants in the suit were all of Morris Alper's other children and their spouses and also the infant children of his daughter Goldye A. Shapiro, though no relief was sought against them. The real defendant, Theresa Alper, in her answer denied the charge of undue influence and by a counter-claim invoked the operation of the Tenth Article in the will of her father, the said Morris Alper. That will be discussed later herein. The counter-claim sought an adjudication that by reason of the Tenth Article all the property whereof Morris Alper died seized or possessed belongs to the defendant Theresa Alper exclusively. With the consent of the defendant Theresa Alper, complainant's bill was subsequently amended so as to include an attack by the complainant upon transfers of funds made by Morris Alper in his lifetime to his daughter Theresa, it being charged that they, too, were the product of her undue influence. To the amended bill the defendant Theresa Alper filed an answer in lieu of plea, setting forth certain undisputed facts upon which she rests her claim that the complainant and all the co-defendants are without interest or right in any of the estate whereof the testator died seized or possessed and without interest or right in any property which might or could thereafter be or become assets of the estate of the said decedent. By her answer in lieu of plea she asserts that she has become entitled to all the property disposed of by her father's will and that even if complainant prevailed herein and the challenged conveyances and transfers were set aside, the property so involved would become assets of the estate of said decedent and would under the provisions of her father's will be her sole and exclusive property and that, therefore, the matters complained of in the bill are moot. To that answer in lieu of plea the defendant Theresa Alper subjoined a counter-claim which by reference reiterates the allegations of said plea and seeks decree that the complainant and all the defendants, other than herself, are without any right, interest *Page 549 
or share in the estate of the testator, Morris Alper, and in and to any property which hereafter might or could become part of that estate, and a further adjudication that she is entitled in her own sole and exclusive right to all such property presently in the estate and as might hereafter become part of the estate, such ownership being subject only to the payment of those charitable bequests specified in the will of Morris Alper.
The matter was heard by me on the limited questions presented by the answer in lieu of plea and its companion counter-claim. Counsel and the court were of the view that if the answer in lieu of plea were sustained, that result might be dispositive of all the other issues in the case, and accordingly all such other issues were reserved.
An analysis of the pleadings and admissions in the case and of the uncontroverted evidence received at the hearing shows that the facts alleged in the answer in lieu of plea are established. They tell the following story:
Morris Alper died in 1945, leaving him surviving three sons and five daughters. One of those daughters is Goldye A. Shapiro, who will hereafter be referred to as the "caveatrix." By the Second and Third Articles of his will, made in 1939, the testator devised all his real estate to seven of his eight children and to four grandchildren, the latter being children of the said caveatrix, she herself not being named in the will as a beneficiary. By the Fourth Article of that will the testator made ten charitable bequests to as many charitable organizations, but provided that these were to be paid only out of the personal property of his estate if the personal estate be sufficient. By the Eighth Article of the will any residuary estate not theretofore disposed of was given to the same children and grandchildren and in the same proportions as provided for in the Third Article of the will in respect of real estate.
The testator appointed his daughter Theresa Alper sole executrix of his will, with full power of sale. The Tenth Article of the will, the one invoked by Theresa Alper in her answer in lieu of plea and related counter-claim, reads as follows: *Page 550 
"Tenth: It is my will and command that should any of my children or said grandchildren institute or maintain any proceeding in any court, for the purpose of attacking the validity of this Will, or for the purpose of effecting a disposition of my estate other than in the specific manner aforementioned, by court proceeding or otherwise, then it is my will and I do hereby order that the respective devises and bequests, other than those herewith made to my executrix aforementioned, be cancelled and deemed forfeited, unless otherwise ordered verbally and in writing by my said executrix, regardless of whether or not they have in any way participated in said contest, and in such event, I devise and bequeath their respective shares to my said devoted and faithful child and executrix, Theresa Alper, aforementioned, provided that such contest by court litigation is not instituted in the first instance by my said executrix, it being my purpose and intent that the validity of this Will and its purposes, as herein expressed, should not be attacked in any manner whatsoever, directly or indirectly, by my said heirs."
The bill herein was filed on December 10th, 1945. Prior thereto and on October 24th, 1945, the said Goldye A. Shapiro, one of the testator's daughters, filed with the surrogate of Essex County a caveat against the probate of the will and thereafter, in January of 1946, filed with the Essex County Orphans Court grounds in support of said caveat, charging against the proponent, Theresa Alper, fraud and undue influence. In the same months she applied, by petition, to the Essex County Orphans Court for the appointment of an administrator pendente lite for the estate of the decedent. The record of the Orphans Court, in evidence before me, reveals that Jerome Alper, one of testator's sons and a defendant herein, joined in the said application for the appointment of an administrator pendente lite. Thereafter the issue raised by the said caveat and grounds of caveat was brought on for trial before the Essex County Orphans Court and was heard on September 26th, 1947, October 2d 1947, October 8th, 1947, November 5th, 1947, and November 6th, 1947. The caveatrix testified in person and called a number of witnesses in support of the caveat, amongst whom were her brothers, Jerome Alper, Harold Alper and Nathaniel Alper, and her sister Pearl Kaufman. The record in the Orphans Court consists of over 700 pages of testimony and many exhibits. Briefs were filed by each side and the controversy was adjudged by the opinion of the Orphans Court filed on or *Page 551 
about February 11th, 1948. The will was admitted to probate and an order to that effect was duly entered on April 9th, 1948. From that order admitting the will to probate the said caveatrix, on April 28th, 1948, appealed to the Prerogative Court. There the matter was heard and submitted on June 28th, 1948. Recently the Prerogative Court sustained the order of probate appealed from.
Upon the foregoing facts, none of which is controverted, the defendant Theresa Alper claims that there has been a contest within the meaning of the Tenth Article of the will and that by force of that article she has become the sole and exclusive owner of all property which is or hereafter can become a part of said decedent's estate (subject only to charitable bequests given in the will) and that such result should be decreed and the bill of complaint dismissed. Complainant and the defendants other than Theresa Alper assert that there has been no contest and that the Tenth Article of the will may not be invoked. The probate of the will was vigorously and bitterly resisted in the Orphans Court and the result of that contest was immediately brought by the caveatrix to the Prerogative Court for review. Even without the drawn-out litigation in the lower court, the appeal itself constituted a "contest" within the prohibition of the will. SeeIn re Simson, 123 N.J. Eq. 388, 392; 196 Atl. Rep. 451. I can hardly conceive of anything more in the nature of a contest than the narrated proceedings concerning the will in question. In view of the fact that the caveatrix, one of testator's children, did attack the validity of the testator's will and did seek by that effort to effect a disposition of the testator's estate other than provided for in the will, what is the effect of the Tenth Article of the will? There the testator expressed his will and command that should any of his children or said grandchildren (the four named in the will) institute or maintain any proceeding in any court for the purpose of attacking the validity of his will or for the purpose of effecting a disposition of his estate other than that stated in the will, then the devises and bequests given respectively to those named in the will, other than those made to his daughter Theresa, should be canceled and deemed forfeited, unless Theresa herself *Page 552 
should otherwise order. The testator further provided that the foregoing loss shall fall upon his children and grandchildren (other than Theresa) "regardless of whether or not they have inany way participated in said contest." (Italics mine.) Further, the testator made a gift-over to Theresa of those canceled and forfeited provisions, but conditioned that gift-over upon the fact "that such contest by court litigation is not instituted in the first instance by my said executrix." In the same article the testator declares that the validity of his will should not be attacked directly or indirectly or in any manner whatsoever.
The testamentary intention is here plainly expressed. The testator was dividing his estate among seven children and the children of an eighth child, Goldye. The evidence shows that Goldye was living apart from her husband. The testator was disposing of real estate by direct devise, and I think it is fair to assume that he made no direct provision for Goldye lest the rights of the separated husband attach. That such rights would attach if he were to die without a will was advice given him by his sons, Jerome and Harold, both lawyers. It is reasonable to believe that it was because of that circumstance that he gave to Goldye's children that share which otherwise would have gone to her directly. He wanted to be certain that no child or grandchild taking under the will (including Goldye, whose children were named as beneficiaries) should institute or inspire an attack on his will. This construction is borne out by the circumstance that the prohibition of the Tenth Article is addressed to "any of my children" and to "said grandchildren." (Italics mine.) When identifying the grandchildren coming within the article, the testator referred to them as "said" grandchildren, meaning those mentioned in the will. He spoke differently, however, when referring to his children. Here there was no qualifying or limiting word of any kind and the language used applies to all his children, whether or not mentioned in the will.
There is no ambiguity about the language of the clause. The testator gave all to his daughter Theresa in the event any child or any beneficiary grandchild contested his will, without regard to whether the others in any way participated in the *Page 553 
contest. Is such provision a sustainable one? The answer is in the affirmative, both on principle and authority.
It is argued that it is an unjust provision that would deprive a non-contesting, and therefore a non-offending, beneficiary of his benefits under the will simply because another inaugurated a contest in which the former did not participate. I do not agree with the view that such provision is unjust. A testator knows best the character and disposition of those upon whom he bestows his bounty and understands better than anyone else what pains and penalties will be effective to prevent litigation over his will. It is not unjust for a testator to prefer and favor some of his kin above others, to give some much and others little, and in his own sole judgment to provide for some and completely exclude others. If he may do this and if he may exclude from his bounty any or all of his kin, then, surely, it cannot be deemed unjust that he bestow his bounty upon express conditions which, to his way of thinking, would secure his will against contest. Even if such provision were deemed unjust, which I do not, it would constitute no sound objection to the validity of the will. Courts do not undertake to substitute their own concepts of morality and generosity for those of testators. I believe that in the instant case the testator made the provision in question in the hope that its drastic effect would be a deterrent upon all and that the many would be able to dissuade the few or the one from taking a step harmful to all.
Is such a provision valid? The briefs of counsel do not furnish a single case where such provision was deemed invalid or even criticised; nor have I found any. On the contrary, the solicitors for the defendant Theresa Alper have directed my attention to a number of decisions (one from our own State) where such provisions were sustained. In In re Simson, supra, the Prerogative Court dealt with a will in which the testator gave his wife $10,000 on the express condition "that neither my said wife or any of my children shall take steps to contest this will or otherwise attack its validity." There was a gift-over to a stranger in the event such contest occurred. The will made no provision either for the son or daughter. The son filed a caveat against the will. Vice-Ordinary *Page 554 
Buchanan held that the contest by the son resulted in the forfeiture of the legacy to the wife and that the gift-over to the stranger vested. It is true that he considered that the wife and daughter participated in the contest, but this he said "is not essential." Counsel for the complainant in the case at bar admits the Simson Case as holding that under such provision as was present there, and is present here, the non-contesting beneficiary may lose because of the act of another, but counsel insists that the Simson Case is distinguishable for the reason that it was a tax case. I do not regard that as being a sound distinction. Testamentary provisions frequently arise and call for interpretation in suits of varying nature, such as ejectment, suits to quiet title, and others. It is of no moment what form the issue takes. Where there is necessarily involved in any type of suit the construction of a clause of a will, that construction by the court becomes part of the law of wills.
I regard the instant case as much stronger than the SimsonCase, above cited. There, as here, the contest was inaugurated by one who took nothing under the will and therefore stood to lose nothing through failure. There the gift to the wife failed and the gift-over took effect because the testator so wished it. There the will was silent on the subject of participation in the contest but such participation was held to be unessential. In the case at bar the testator explicitly and affirmatively provided that in the event any child of his attacked the will, all his children should take nothing thereunder "regardless of whether or not they have in any way participated in said contest." Theresa also was barred but only if the contest by court litigation be instituted in the first instance by her. The testator did not rely upon the rule of law, laid down in the Simson Case, that participation is not essential, but he made that rule an express and positive provision of his will. It therefore matters not that Jerome Alper participated and aided in the contest when he too sought to have the Orphans Court appoint an administratorpendente lite in place of the executrix named in the will. Nor does it matter that several of the other beneficiaries aided the caveatrix in her attack. Distinct traces of such aid are present in *Page 555 
the record before me. It is enough to say that the benefits conferred by the will upon the testator's children, other than Theresa, were expressly conditioned upon the event that no attack on the will come from any child of his, whether beneficiary or not, or from any grandchild named as a beneficiary. Goldye Shapiro's attack both in the Orphans Court and in the Prerogative Court constituted such breach of that condition as caused the gift-over to Theresa to take effect, and I so hold.
The Supreme Court of Pennsylvania had the like question before it in In re Alexander's Estate, 19 Atl. Rep. 2d 374. That was a partition suit in which it became necessary to construe a contest clause in a will. The testator was survived by his widow, who was his second wife, their one son, Arthur, and three sons by a former marriage. He provided that his real estate be rented and the income divided among his four sons. He made certain provisions for his wife and then directed that in the event his wife contested his will or was not wholly satisfied therewith and "offers any legal Proceedings then my Son Arthur B. Alexander by her shall receive the sum of $5.00 Five and 00/100 Dollars as his share only and nothing more." The widow elected to take against the will and sought partition of the real estate. The Orphans Court sustained the provision as a valid condition subsequent. The son Arthur appealed. On appeal the Supreme Court of Pennsylvania pointed out that it was the testator's intention to provide an equitable distribution between two groups of persons, the children of his first wife, on the one hand, and his widow and their child, on the other hand, and that he undertook to provide for two situations that might arise after his death, one where the widow would accept the provisions of the will and the other where she might not be satisfied and would exercise her legal right to take against the will. The court held that he had the same legal right to impose the condition subsequent as she had under the law to accept or reject the provisions of the will. It held that the widow's election to take under the will was a condition precedent to her son's participation in the estate with his three brothers. It further held that the son Arthur was entitled *Page 556 
to $5 and nothing more. It was also held that the provision there questioned did not violate public policy or public decency.
In In re Carr's Estate, 138 Pa. 352; 22 Atl. Rep. 18, the testator gave to the son of his wife by a former marriage a bequest "upon the condition, however, that my said wife shall accept the provisions of" the will and elect to take under it. The widow refused. The Supreme Court of Pennsylvania upheld the condition and ruled that the son was not entitled to the legacy. See, also, In Mohn's Appeal, 76 Pa. 92.
A case very much in point is that of Perry v. Rogers,52 Tex. Civ. App. 594; 114 S.W. Rep. 897; decided by the Court of Civil Appeals of Texas in 1908. The testator Perry left him surviving his fourth wife and children by her, and also children by the wives of his first and third marriages. In all he left eleven children, later increased by Robert, posthumously born. He made provision for the various groups and then directed that if at any time any attempt should be made by any one to change or break his will, then his estate should belong entirely to his widow and the children had by her. Suit was brought by children of the first marriage against other children of that marriage and against the children of subsequent marriages. Partition was sought, and that was in conflict with the distribution contemplated by the will. The county court held that under the contest clause of the will all the benefits to all the children, both contesting and non-contesting, were forfeited and became vested in those to whom the testator made a gift-over, namely, his widow, her two sons who survived the testator and the third son, who was posthumously born. The contest clause was challenged in the Court of Appeals on the grounds that it contravened public policy and, further, that it was not effective against infant beneficiaries. The appellate court said that if it was the intention of the testator that in the event of a contest the property should go to his surviving wife and the children of that marriage, to the exclusion of the children of the first and third marriages, such intention was a lawful one and the will should be so construed as to give it effect. With respect to the point that this would deprive devisees, innocent of any *Page 557 
attack, of their benefits under the will and on the points of public policy and the effect on infants, the court said:
"The intention being plain, that to give it effect will operate to deprive devisees innocent of any attack on his right to dispose of the property of the benefit it conferred upon them furnishes no reason why his will should not be enforced as he intended it should be. The condition upon which such innocent persons should hold under the will not operating to violate the law, nor in contravention of good morals or public policy, the courts cannot do otherwise than enforce it. Within the bounds suggested the law conferred upon the testator full power freely to make any disposition he desired to make of his property. Having kept within those bounds, whether he exercised the right he possessed wisely or unwisely, justly or unjustly, is not for the courts to determine. It is true, as appellant argues it is, that to construe the will as we have indicated it should be construed might operate to permit one of the devisees to elect for all, and by his election to attack the will, effect a forfeiture as against those willing to accept under it. In a given case it also might be true, as counsel declares, that `Such an effect would be unreasonable, unjust, and shocking to the conscience of any court.' Whether it would be or not we think would depend upon all the circumstances surrounding the testator, and which might be regarded as having influenced his action. In the absence of a statement of facts showing what those circumstances were in this case in support of the judgment, were it necessary to do so, we should assume they were of a character to so explain the testator's act as to relieve it of such criticism. But we are of the opinion that, if it affirmatively appeared from the record that the will in the particular in question was unreasonable and unjust, the intention of the testator nevertheless being plain, we would have no right to revise or remake the will. `When,' said a writer on the subject, `a testator has made known his purposes in respect to his property by the use of plain and unambiguous language, though his purposes may seem unreasonable, unjust, or absurd to others, his will is its own expositor, and a law unto the court, where it violates no principles of law or morality.' 30 A. *Page 558 E. Ency. Law (2d ed.) 663, and authorities there cited; 1Underhill on Wills, § 105.
"It is further urged on behalf of appellant that a forfeiture of the devise to him could not be accomplished, as determined by the judgment, because he was a minor. If the forfeiture urged depended upon some act, or failure to act, on his part there might be force in the contention. But it does not. It was accomplished as a result of the conduct of others, which by the terms of the will was to have that effect. Therefore the fact that he was a minor was of no importance. Harrison v. Foote,9 Tex. Civ. App. 576; 30 S.W. Rep. 839; 2 Underhill on Wills, pp.672-675."
The condition expressed in the Tenth Article of the will does not offend public policy. No question of public policy is or can be involved therein. It is of no interest or concern to the public which, if any, of a testator's children or other relatives shall succeed to his estate. If it were otherwise, then a testator would be unable to donate his estate to charity, to the exclusion of his family. The law is otherwise. The reports contain many decisions recognizing the right of a testator to exclude all relatives from his testamentary bounty. That right is fundamental and absolute. Surely, then, if a testator may exclude a kinsman, he may include him upon any conditions which work no violence or injury to the public weal. I therefore hold that the condition in the will here involved is entirely valid and enforceable.
The answer of the defendant Goldye A. Shapiro sets up the claim that her father died intestate and that the will offered for probate was the product of undue influence exerted by Theresa Alper. This is a mere reiteration of the grounds upon which she attacked her father's will both in the Orphans Court and in the Prerogative Court. As has already been shown, the will was sustained in both courts as one free of undue influence. The defense has not been sustained in this cause.
The other defendants in the case filed answers alleging (a) that Theresa had practiced fraud, duress and undue influence upon her father; (b) that by means of fraudulent transfers of his property she impoverished the decedent; (c) that the *Page 559 
alleged attempts of Theresa to acquire all or most of her father's property provoked Goldye A. Shapiro into filing the caveat and that therefore Theresa was the cause of the filing thereof; (d) that the defendants themselves did not institute the attack on the will; (e) that the contest clause in the will is contrary to public policy and is not enforceable against the infant defendants or the charitable organizations named in the will; and (f) that the contest clause is ineffective against the defendants Jerome Alper, Mildred Markowitz and Pearl Kaufman, who claim to be creditors of the decedent. All these objections are frivolous. Aside from the fact that the charges of fraud, duress and undue influence were resolved in favor of Theresa Alper in the will contest, the more important fact remains that if this court were to find that any transfer from father to daughter should be set aside, the result would be only to enlarge the testator's estate and bring the accretion within the operation of the Tenth Article of the will, the contest clause. Neither the complainant nor any of Theresa Alper's co-defendants could benefit by that result. The decedent's estate, so enlarged, would, in turn, be her sole property under the gift-over to her.
The condition subsequent here involved is as binding on the infant grandchildren as upon the adult beneficiaries. Their infancy furnishes no escape from its operation, and I think the like rule laid down in Perry v. Rogers, supra, is correct. A gift to an infant may be coupled with any conceivable conditions, save those which violate public policy. They take the benefits of the will cum onere. Nor does the contest clause and the enforcement thereof affect the rights of those charitable organizations to which the testator left bequests, or impair the rights of creditors. It is clear that the Tenth Article of the will terminates only bequests and devises in favor of children and grandchildren and does not extend to others. The charitable bequests remain intact. So do the rights of creditors. Upon the gift-over taking effect, the ultimate donee takes the estate subject to rights of creditors, if any.
The defendants have invoked the unclean hands doctrine against Theresa. That doctrine is not available against a *Page 560 
defense and is therefore not available against the answer in lieu of plea.
I find that the answer in lieu of plea has been sustained and that by operation of the Tenth Article of the will of Morris Alper his entire estate, consisting of that now therein and that which might hereafter be added thereto by litigation or otherwise, has become the property of the defendant Theresa Alper and is vested in her exclusively. The complainant and the other defendants are therefore without interest in the subject-matter of the bill and the amendment thereto.
Theresa Alper filed a counter-claim based on the same facts as her answer in lieu of plea. In that counter-claim she seeks an adjudication against the defendants of the same purport and effect as I have held with respect to her answer in lieu of plea. My holding on the answer disposes of the counter-claim. Where a counter-claim depends on the same facts as a related answer, the disposition of the answer is res judicata of the counter-claim. It was so held by Vice-Chancellor Backes in Turnbull v. EightCreditors Corp., Inc., 108 N.J. Eq. 9; 153 Atl. Rep. 625;
affirmed, 110 N.J. Eq. 71; 150 Atl. Rep. 93.
A decree will be entered in accordance with these views. *Page 561