[No. B188711. Second Dist., Div. One. Oct. 31, 2006.]

ROBYN R. TUNSTALL, Plaintiff and Respondent, v.
ELIZABETH H. WELLS, Individually and as Trustee, etc., Defendant and
Appellant.

**COUNSEL**

Blumberg Law Corporation and Ave Buchwald for Defendant and Appellant.

Magee & Adler, Eric R. Adler; and Robert D. Feighner for Plaintiff and Respondent.

## OPINION

**ROTHSCHILD, J.**—In this case, we hold that a testamentary trust's no contest clause providing that one beneficiary's contest voids other noncontesting beneficiaries' bequests along with the contestant's does not, in itself, violate public policy.

Elizabeth H. Wells (Elizabeth)[1] appeals from an order following the trial court's finding that the no contest clause in a trust established by her father was void as against public policy. She contends that the provision in question does not violate public policy and is not otherwise void. Following our review of California and foreign authorities in this case of first impression, we agree with Elizabeth and reverse.

## FACTS

Robert and Hazel Wells, parents of the parties in this case, created a living trust in November 1986.[2] When Hazel died in 1994, the trust assets were divided into a survivor's trust, a bypass trust, and an exemption trust pursuant to the living trust's terms. Robert Wells (Wells), trustee of the survivor trust, distributed all of that trust's assets to himself, then in January 2004 created the Robert Sheaff Wells Family Trust (Trust) and transferred the survivor trust assets into it. The Trust named his five children as beneficiaries: Robert Wells, Jr. (Robert, Jr.), Elizabeth, Robyn R. Tunstall (Robyn), Judith Ann Conner (Judith), and Dianne Jean Morton (Dianne). The Trust provided that upon Wells's death, Robyn, Judith, and Dianne would each receive $50,000, and all other assets would be distributed to Robert, Jr., and Elizabeth. Elizabeth was designated trustee after Wells's death.

The Trust originally included a standard no contest clause stating that if any Trust beneficiary contested the Trust, then that beneficiary would be specifically disinherited. In February 2004, Wells amended the Trust's no contest clause to read, "For the purpose of this paragraph [the no contest clause], if any one of the Trustor's daughters, ROBYN, JUDITH and/or DIANNE, should be the contesting person as described above, then in that event the gift [*sic*] to all three daughters are hereby revoked." Wells died in March 2005, survived by all five children.

---

[1] We will refer to the parties by their first names for purposes of clarity, not out of disrespect. (See *In re Marriage of Olsen* (1994) 24 Cal.App.4th 1702, 1704, fn. 1 [30 Cal.Rptr.2d 306].)

[2] All parties agree on the relevant facts in this appeal and acknowledge that the only issue for our consideration is a question of law.

In July 2005, Robyn filed a "safe harbor" application pursuant to Probate Code section 21320[3] to determine whether the February 2004 amended no contest clause violated public policy and was void.[4] Robyn did not challenge the validity of the Trust's original, unamended no contest clause, and she acknowledged that she would lose her $50,000 gift from the Trust if she contested it. In response, Elizabeth denied that the amended no contest clause violated public policy. In September 2005, Judith and Dianne joined Robyn's petition solely to determine whether the no contest clause applied to them if Robyn contested the Trust.

On October 27, 2005, the trial court heard the parties' arguments. Robyn's counsel maintained that the amended no contest clause was punitive and against public policy in that it was designed to keep an entire class of beneficiaries from going to court to challenge the Trust. Elizabeth's counsel countered that the clause was favored by public policy. Noting concerns that the clause allowed one of Elizabeth's sisters to revoke unilaterally the other two sisters' gifts, whether out of spite, collusion with Elizabeth, or other ill motives, the trial court struck the February 2004 amendment as "contrary to public policy." Elizabeth timely appealed.[5]

## DISCUSSION

### A.

Elizabeth contends that the Trust's no contest clause is neither overbroad nor against public policy, and that a provision conditioning a testamentary gift to a beneficiary on there being no contest by another beneficiary is valid under California law. Although she finds no California authority that directly addresses this particular issue, she cites authorities in California that have upheld no contest clauses disinheriting the contestant and cases from other states that have upheld provisions similar to the one in this case.

Because this is a question of first impression in California, we review both California law and the law of other states in determining that a provision such as the Trust's no contest clause, which conditions testamentary gifts to various beneficiaries on the absence of a contest of the testamentary document by any one of them, is valid under California law.

---

[3] All further statutory references are to the Probate Code unless otherwise indicated.

[4] Robyn originally also sought a determination whether her proposed contest of the Trust would trigger the no contest clause in the 1986 living trust. In light of the opinion in *McIndoe v. Olivos* (2005) 132 Cal.App.4th 483, 488–489 [33 Cal.Rptr.3d 689], Elizabeth later acknowledged that it would not, and she does not raise this issue on appeal.

[5] The order is appealable. (§ 1304, subd. (d); *Estate of Davies* (2005) 127 Cal.App.4th 1164, 1172, fn. 7 [26 Cal.Rptr.3d 239].)

## B.

██ No contest clauses in wills or trusts, sometimes called "in terrorem" or forfeiture clauses, provide that for beneficiaries to take gifts under a testamentary instrument, they must acquiesce to the terms of that instrument. (§ 21300, subd. (d); *Burch v. George* (1994) 7 Cal.4th 246, 254 [27 Cal.Rptr.2d 165, 866 P.2d 92], abrogation on a different point by later legislative enactment recognized by *Estate of Rossi* (2006) 138 Cal.App.4th 1325, 1339 [42 Cal.Rptr.3d 244]; *Estate of Davies, supra,* 127 Cal.App.4th at pp. 1172–1173; *Estate of Kaila* (2001) 94 Cal.App.4th 1122, 1128 [114 Cal.Rptr.2d 865].) Such clauses seek to prevent contests of wills or trusts by threatening disinheritance of beneficiaries who might otherwise challenge the instruments: hence the label "in terrorem." (See *Estate of Kaila, supra,* 94 Cal.App.4th at p. 1128 ["The purpose of no contest clauses 'is to discourage will contests by imposing a penalty of forfeiture against beneficiaries who challenge the will.' "].) The operation and applicability of testamentary no contest clauses is partly, but not entirely, controlled by statute. (§ 21301 ["This part is not intended as a complete codification of the law governing enforcement of a no contest clause. The common law governs enforcement of a no contest clause to the extent this part does not apply."]; see also *Estate of Ferber* (1998) 66 Cal.App.4th 244, 252 [77 Cal.Rptr.2d 774].)

## C.

██ Extensive California authority spanning more than a century supports the general validity of no contest clauses that disinherit a contesting heir. (See, e.g., §§ 21300–21320; *Estate of Davies, supra,* 127 Cal.App.4th at pp. 1172–1173; *Estate of Kaila, supra,* 94 Cal.App.4th at pp. 1128–1129; *Burch v. George, supra,* 7 Cal.4th at p. 254; *Estate of Black* (1984) 160 Cal.App.3d 582, 586–587 [206 Cal.Rptr. 663]; *Estate of Friedman* (1979) 100 Cal.App.3d 810, 814 [161 Cal.Rptr. 311]; *Estate of Goyette* (1968) 258 Cal.App.2d 768, 772 [66 Cal.Rptr. 103]; *Estate of Markham* (1941) 46 Cal.App.2d 307, 314–315 [115 P.2d 866]; *In re Kitchen* (1923) 192 Cal. 384, 388–390 [220 P. 301]; *Estate of Miller* (1909) 156 Cal. 119, 121–122 [103 P. 842]; *Estate of Hite* (1909) 155 Cal. 436, 439–441 [101 P. 443].) "No contest clauses are valid in California and are favored by the public policies of discouraging litigation and giving effect to the purposes expressed by the testator. [Citations.]" (*Burch v. George, supra,* 7 Cal.4th at p. 254; see also *Estate of Hite, supra,* 155 Cal. at pp. 440–441.)

██ The Legislature, however, has limited the reach of no contest clauses. The Probate Code provides that certain challenges to testamentary instruments, such as those involving allegations of forgery, later revocation, or provisions involving self-interested drafters or witnesses, or those statutorily

declared to be protected by public policy, will never trigger a no contest clause. (§§ 21305–21307.) Because the threat of forfeiture for contesting a will or trust is so dire, section 21320 also provides that after such an instrument has become irrevocable, a beneficiary may apply to the probate court for a determination whether a particular petition, motion, or other act by that beneficiary would constitute a contest to the testamentary instrument under the no contest clause. (§ 21320; see also *Estate of Davies, supra,* 127 Cal.App.4th at p. 1173.) Included among the issues that may be determined by such a "safe harbor" petition under section 21320 is whether a provision in a testamentary instrument violates public policy, because "any other rule would make a no-contest clause virtually impenetrable to public policy attacks" and could not be countenanced by the courts. (*Estate of Davies, supra,* 127 Cal.App.4th at p. 1173, fn. 9; see also *Estate of Ferber, supra,* 66 Cal.App.4th at p. 251.) "Beneficiaries must be free to raise public policy issues so the court may address them." (*Estate of Ferber, supra,* 66 Cal.App.4th at p. 252.)

### D.

"The interpretation of a will or trust instrument presents a question of law unless interpretation turns on the credibility of extrinsic evidence or a conflict therein." (*Burch v. George, supra,* 7 Cal.4th at p. 254.) If the parties do not dispute the facts, as in this case, "it is our duty to independently construe the trust instrument." (*Ibid.;* see also *Estate of Ferber, supra,* 66 Cal.App.4th at p. 251.) Thus we review de novo whether the Trust's no contest clause violates public policy. (*Estate of Davies, supra,* 127 Cal.App.4th at p. 1173; see also *Florio v. Lau* (1998) 68 Cal.App.4th 637, 641 [80 Cal.Rptr.2d 409].)

Authorities consistently emphasize and reaffirm that "even though a no contest clause is strictly construed to avoid forfeiture, it is the testator's intentions that control, and a court 'must not rewrite the [testator's] will in such a way as to immunize legal proceedings plainly intended to frustrate [the testator's] unequivocally expressed intent from the reach of the no-contest clause.' [Citation.]" (*Burch v. George, supra,* 7 Cal.4th at p. 255; see also, e.g., *Estate of Davies, supra,* 127 Cal.App.4th at p. 1173; *Estate of Kaila, supra,* 94 Cal.App.4th at pp. 1128–1129; *Estate of Markham, supra,* 46 Cal.App.2d at p. 315.) In this case, there is no question as to Wells's intent in adding his February 2004 amendment to the Trust, and Robyn does not allege any uncertainty: he intended that a will contest by any one of Elizabeth's three sisters would trigger forfeiture of the testamentary gifts to each of them. Construed strictly or broadly, the meaning is clear.

## E.

Robyn contends that notwithstanding Wells's clear intent, certain public policy concerns require us to find the no contest clause invalid. Some of these alleged public policies are not in issue, however, because of judicial or statutory limitations on no contest clauses. Robyn, invoking *Estate of Ferber, supra*, 66 Cal.App.4th 244, contends that the state has a strong interest in protecting the rights of trust beneficiaries, that they must have access to courts to challenge trust terms that violate public policy and breaches of fiduciary duty, and that the Trust's no contest clause improperly obstructs such access. The no contest clause, however, does not prevent Elizabeth's sisters from raising public policy claims; they are free to do that through a section 21320 application, as they have done here. (*Estate of Ferber, supra*, 66 Cal.App.4th at pp. 251–252.) Nor does the clause discourage challenging a trustee's breach of fiduciary duty. Elizabeth, as successor trustee, has a fiduciary duty to administer the trust solely in the interest of the beneficiaries (§ 16002), and under statutorily declared public policy, the sisters may challenge Elizabeth's exercise of fiduciary power without triggering the no contest clause pursuant to section 21305, subdivision (b)(6). (*Hermanson v. Hermanson* (2003) 108 Cal.App.4th 441, 443 [133 Cal.Rptr.2d 486].) Regarding the trial court's apprehension that Elizabeth could collude with any one of her sisters to have that sister contest the will and so deny the other sisters their gifts, the no contest clause would not prevent the aggrieved sisters from challenging Elizabeth's exercise of fiduciary power. (§ 21305, subd. (b)(6).)

Citing *Estate of Ferber*, Robyn argues that the clause impinges on the integrity of the probate court. The argument fails. The Legislature, by imposing numerous limitations on the operation of no contest clauses, already has acted extensively to protect litigants' access to the courts[6] and the integrity of the probate court. Thus, legislative limitations on no contest clauses protect the public policies discussed in *Estate of Ferber, supra*, 66 Cal.App.4th at pages 251–254.[7] Nor do we perceive any threat to judicial integrity in upholding the clause.

---

[6] We note that a testamentary no contest clause never precludes litigation; it merely confronts a potential litigant with the possibility of losing a testamentary gift, and thus also the decision whether the gain from contesting the will or trust is substantial and probable enough to outweigh the loss of the testamentary entitlement. (*In re Kitchen, supra*, 192 Cal. at p. 389 [noting that such a decision is "the ordinary one which arises in almost every business transaction—whether the thing offered is worth the price demanded."].)

[7] *Ferber* principally concerned an effort to oust a trustee in the face of a no contest clause that specifically forbade such an effort, which is not an issue in this appeal. (*Estate of Ferber, supra*, 66 Cal.App.4th at pp. 248–250, 252–254.)

Robyn contends that no contest clauses are " 'not strongly favored by law' " because their enforcement brings forfeiture.[8] The traditional public policy disfavoring forfeitures also concerns testamentary no contest clauses. (*Estate of Kaila, supra,* 94 Cal.App.4th at p. 1128; *Estate of Black, supra,* 160 Cal.App.3d at p. 587.) But to address this concern, no contest clauses are strictly construed, which is "consistent with the public policy to avoid a forfeiture *absent the donor's clear intent.*" (*Estate of Kaila, supra,* 94 Cal.4th at p. 1129, italics added.) Thus, this public policy only applies where the testator's intent is unclear. Here, as we have discussed, Wells's intent to establish a forfeiture condition was clear.

## F.

Of the other grounds offered to support the contention that the Trust's no contest clause violated public policy—overbreadth and inadequate due process—Robyn cited no authorities to support the invocation of these public policy interests or how they apply to this case. Nonetheless, we address these grounds.

█ Briefly, overbreadth, like the related concept of vagueness, is a doctrine in constitutional law that applies to legislative enactments or similar state actions that sweep too broadly beyond the government's legitimate purpose and invade constitutionally protected rights excessively. (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 577 [20 Cal.Rptr.2d 341, 853 P.2d 507]; 13 Cal.Jur.3d (2004) Constitutional Law, § 62; Black's Law Dict. (8th ed. 2004) p. 1267, col. 2.) We do not see how this doctrine could apply to this case, or to the no contest clause in any private testamentary instrument. The same goes for due process, which also concerns citizens' relationship with the government. (See *People v. Sonleitner* (1960) 185 Cal.App.2d 350, 356–359 [8 Cal.Rptr. 528]; 13 Cal.Jur.3d, *supra,* Constitutional Law, § 299.) We have already discussed the matter of strict construction of the no contest clause and the absence of vagueness or ambiguity in Wells's clear intentions to create a forfeiture condition.

## G.

Underlying the various specific grounds to void the no contest clause that Robyn identifies—risk of collusion, overbreadth, denial of due process—is

---

[8] In making this argument, Robyn quotes from *Estate of Katleman* (1993) 13 Cal.App.4th 51, 66 [16 Cal.Rptr.2d 468]. However, in *Katleman,* the court only notes that testamentary no contest clauses are not strongly favored by the law "[c]ompared to the right of children and spouses not to be inadvertently omitted from a deceased parent's or spouse's estate"; otherwise, the *Katleman* court reaffirms that no contest clauses are enforceable and not against public policy but must be strictly construed. (*Id.* at p. 66.)

her basic position that Wells's forfeiture provision simply is not fair and therefore is against public policy. But what to some might seem unfair does not necessarily violate public policy.

■ "Public policy" is inherently hard to define. (*Maryland C. Co. v. Fidelity etc. Co.* (1925) 71 Cal.App. 492, 496–497 [236 P. 210] (hereafter *Maryland*).) But notwithstanding this difficulty, the concept has limits, and a court therefore should not freely characterize any potential source of unpleasantness between people as a violation of public policy. It is primarily the prerogative of the Legislature to declare what is against public policy, though courts may find something to be against public policy if it is "clearly injurious to the interests of society." (*Id.* at p. 497 [addressing the voiding of contracts on public policy grounds]; see also *Green v. Ralee Engineering Co.*, 19 Cal.4th 66, 71–72 [78 Cal.Rptr.2d 16, 960 P.2d 1046] ["We continue to believe that, aside from constitutional policy, the Legislature, and not the courts, is vested with the responsibility to declare the public policy of the state."].) The power to invalidate private agreements and instruments on public policy grounds is far-reaching and easily abused and should be used carefully and sparingly. (See *Maryland, supra,* 71 Cal.App. at p. 497.) A public policy must be sufficiently clear to justify exercising "such a potent remedy." (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1090 [4 Cal.Rptr.2d 874, 824 P.2d 680] [addressing public policy doctrine as to unlawful termination claims], overruled on other grounds in *Green v. Ralee Engineering Co., supra,* 19 Cal.4th at p. 80 & fn. 6.)

■ To help ensure that declarations of public policy are based on more than merely a particular court's sense of fairness, the policy in question should involve a matter that affects society at large rather than the litigants' purely personal or proprietary interests. (*Gantt v. Sentry Insurance, supra,* 1 Cal.4th at p. 1090.) In the context of employment law, for example, courts in California and elsewhere generally have rejected public policy claims unsupported by constitutional or statutory authority. (*Id.* at pp. 1090, 1094.) In sum, "it is generally agreed that 'public policy' as a concept is notoriously resistant to precise definition, and that courts should venture into this area, if at all, with great care and due deference to the judgment of the legislative branch, 'lest they mistake their own predilections for public policy which deserves recognition at law.' [Citation.]" (*Id.* at p. 1095.) A public policy that has not been clearly expressed by the Legislature should at least be fundamental, substantial, and firmly established. (See *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 670, fn. 11 [254 Cal.Rptr. 211, 765 P.2d 373] [addressing public policy in the employment law arena].)

## H.

■    With these strict requirements in mind, we consider whether the Trust's no contest clause amounts to a violation of public policy. First, we note that in general, a testator has the right to grant bequests subject to any lawful conditions he or she may select. Beneficiaries of a testamentary instrument have no right to testamentary bequests except subject to the testator's conditions, and it generally is not the role of a court to rearrange those bequests or conditions in keeping with the court's sense of justice. "[I]n the minds of others than the testator, the question whether a will is just or unjust is a matter of opinion, and the policy of the law is to make the disposition under a will in accordance with the desires of the testator." (*Estate of Markham, supra*, 46 Cal.App.2d at p. 314.) "[I]t must be conceded that the property of the testator is his to dispose of as he wills, and he is not called upon to consult the wishes or views of his beneficiaries or of juries or courts." (*Id.* at p. 314.) A competent testator therefore has "the right to distribute his property upon such terms and conditions as to him seem just and proper; and the recipient of the testator's bounty is required to partake thereof under the terms provided in the testamentary document, so long as such terms and conditions are not prohibited by some law or opposed to public policy." (*Id.* at p. 314; see also *Estate of Black, supra*, 160 Cal.App.3d at 586 [no contest clause creates a condition subsequent upon bequests].)

In this case, Wells had the right to leave Elizabeth's three sisters nothing at all, and he also had the right to leave them relatively modest gifts subject to an individual-specific forfeiture clause. Wells's intentions to impose conditions on the three daughters' gifts generally were within his rights as a testator. And public policy favors his desire to avoid litigation. So the question is whether the policy concerns regarding this no contest clause are so different from those raised by a traditional no contest clause that they require us to find a violation of public policy. We conclude that they are not.

■    In response to Robyn's and the trial court's conclusion that the particular terms of Wells's no contest clause are so unfair that they trump the traditional public policy of upholding the testator's intent, we point out that the fairness of a testamentary instrument, unless it violates public policy, is not an issue for judicial review. We note that valid wills or trusts may contain terms that might strike outside observers as unfair. We might see it as unfair if a testator gave nothing whatsoever to a dutiful child while giving the entirety of a large estate to the dutiful child's unworthy sibling—but a testator may do that, and we would step dangerously outside our proper role were we to rewrite such an instrument to reflect our sense of justice. We further note that neither we nor the trial court can ever possess the intimate understanding of the internal dynamics and interrelationships within a family that a testator

would have. This is another reason why courts generally should defer to a testator's clearly stated intentions, even in situations where a testamentary instrument might seem unfair to an outsider.

Wells expressed a clear intention to treat Elizabeth's three sisters as a group, by awarding each of them the same bequest and subjecting them to the condition that a contest by any one of them would void the bequests to all three sisters. The three sisters similarly would have been treated as a group had Wells specifically disinherited all of them while giving all trust assets to Elizabeth and Robert, Jr., or had he given them all the same bequests subject to a traditional forfeiture clause applying to them only individually, as he could have done. The only difference here is that a contest by one brings forfeiture of the others' bequests.

■ The trial court indicated that it saw no reason for the no contest clause, except perhaps to be mean-spiritedly punitive, because Wells could have simply disinherited the three sisters. But mean-spiritedness in a testamentary instrument is not in itself illegal or against public policy. Moreover, we conceive of rational reasons why Wells might have selected the approach he did. Unlike the trial court and us, he knew his three daughters. He clearly showed an intent to treat them as a group, both by the identical bequests and by the no contest clause. This might be because Wells believed that the three sisters tended to act as a group, and he might have designed his amended forfeiture clause precisely to discourage them from colluding in contesting the suit by forcing them to risk all their gifts to challenge the Trust, rather than only one of the three bequests. Also, the group forfeiture clause normally would tend to discourage litigation—and thus promote public policy—even more than a traditional individual-specific clause, because the other members of the group could be expected to exert pressure on any one member not to break ranks.

Also, contrary to the trial court's statement that Wells clearly wanted to give gifts to Elizabeth's three sisters, it is possible that he actually wanted to give each of them nothing, but instead gave each a modest bequest along with the no contest clause to give them a greater incentive not to contest the will. We cannot know for certain what internal dynamic within the Wells family led Wells to structure the no contest clause as he did. As such, reviewing courts should defer to his expressed intent based on his superior knowledge of such private matters. What we do know is that he gave Elizabeth's three sisters gifts conditioned on none of them contesting the Trust. Wells "could give or refrain from giving; and could attach to [his] gift[s] any lawful condition which [his] reason or caprice might dictate. [He] was but dealing with [his] own property and the beneficiar[ies] claiming thereunder must take the gift[s], if at all, upon the terms offered." (*In re Kitchen, supra*, 192 Cal. 384, 388–389.)

The trial court was concerned that the clause invites collusion between Elizabeth and one of her three sisters to void the other sisters' gifts, but it also discourages collusion between the three sisters to have one contest the Trust without placing the others' gifts at risk. Moreover, even if the clause opens the possibility of improper collusion between Elizabeth and any one sister, it does not mandate or actively encourage such impropriety. By giving each of Elizabeth's sisters a bequest along with the group forfeiture clause, the Trust gives each a substantial incentive not to contest the will that is similar to but stronger than what the same bequests with a standard no contest clause would provide. That human deviousness can devise a way to interfere with this legitimate purpose does not necessarily make the clause improper. The trial court's reasoning that the clause created an improper motive or opportunity to collude or express hatred would also apply to any testamentary clause providing that one donee takes only if another predeceases. This obviously creates a motive for the latent interest holder to dispatch the prior interest holder, and such has long been the stuff of novel and film plots, but such conditions are nevertheless valid in testamentary instruments.

## I.

As we have noted, Robyn offered no authorities, either in California or out of state, indicating that this no contest clause is contrary to public policy. Nor have we been able to find any such authority. It is true that the Second and Third Restatements of Trusts and certain treatises state that a provision in a testamentary instrument may be void as against public policy if it encourages disruption of a family relationship.[9] The only primary authority upon which these secondary authorities rely for their statements concerning sibling relationships is *Girard Trust Co. v. Schmitz* (1941) 129 N.J. Eq. 444 [20 A.2d 21] (*Schmitz*). In *Schmitz*, a bitter testator created a testamentary trust providing that four of his siblings would share his estate so long as none of them had any contact with another brother and sister whom the testator hated. (*Id.* at pp. 24–25.) The New Jersey equity court found no statutory prohibition against such a provision or any violation of a traditional common law duty (*id.* at pp. 28, 34), but ruled that the conditions violated public policy. (*Id.* at

---

[9] (See, e.g., Rest.3d Trusts, § 29, com. j, p. 62 ["A trust or a condition or other provision in the terms of a trust is ordinarily . . . invalid if it tends to encourage disruption of a family relationship or to discourage formation or resumption of such a relationship. . . . [¶] . . . [¶] The policy against undermining family relationships applies as well to trust provisions that discourage a person from living with or caring for a parent or child or from social interactions with siblings."]; Rest.2d Trusts, § 62, com. g, p. 165 ["A trust or a provision in the terms of the trust may be held invalid on the ground that its enforcement would tend to disrupt family relations other than the relation between husband and wife and the relation between parent and child. Thus, if an interest given to a person is to be forfeited if he has any social relations with his brothers and sisters, the condition may be illegal."].)

pp. 36–37.) The court concluded, "Since 'the family is the origin of all society and all government' [citation], the protection of the family being the paramount purpose of all government and laws [citation], any act, be it in the form of covenant, contract, or condition, testamentary or otherwise, which tends to disrupt the family must be held, on principles of the common law, to be void as against public policy." (*Id.* at p. 37.) The court acknowledged that it was creating a new rule on equitable grounds without prior decisions on the subject. (*Id.* at p. 36.)

In *Schmitz*, the beneficiaries could take their gifts only if they broke off all contact with their siblings. So family disruption was written into the testamentary trust. In this case, by contrast, family disruption is not mandated by the Trust. The three sisters can take their gifts peacefully and not contest the Trust. If they choose to allow the Trust to disrupt their relations with their siblings, that is their own decision, as with any situation in which a will contest leads to hostility between surviving family members.

## J.

Foreign authorities also support our conclusion. We review them briefly.

Robyn cites a treatise article that reviews state law on no contest clauses to show that many states and court opinions hold no contest clauses inoperable if will contests are made in good faith and with probable cause. (Annot., Validity and Enforceability of Provision of Will or Trust Instrument for Forfeiture or Reduction of Share of Contesting Beneficiary (1983) 23 A.L.R.4th 369.) The cited article proves that point, but it also indicates that California is in good company among the states that favor no contest clauses in general, and that California traditionally has been among the states that hold no contest clauses valid regardless of whether there is probable cause or good faith to challenge them. (23 A.L.R.4th at pp. 374, 380, §§ 3, 4(b).) As we have discussed, the California Legislature has statutorily invalidated no contest clauses with regard to various issues or challenges, some subject to a reasonable cause or probable cause standard (see §§ 21306–21307), some not. (See § 21305, subd. (b).) This selective invalidation of no contest clauses in certain circumstances but not others implies a legislative intent to keep such clauses in force in those circumstances not covered by legislation. That some states differ on how to handle forfeiture clauses does not mean that California's approach is invalid.

Elizabeth cites various foreign authorities in which courts held forfeiture clauses similar to the Trust's no contest clause to be valid. (*Alper v. Alper* (1948) 142 N.J. Eq. 547 [60 A.2d 880] (hereafter *Alper*); *Alper v. Alper* (1949) 2 N.J. 105 [65 A.2d 737]; *Houston Estate* (1952) 371 Pa. 396 [89 A.2d 525];

*Perry v. Rogers* (1908) 52 Tex.Civ.App. 594 [114 S.W. 897].) The reasoning in these opinions helps to confirm our conclusion that the Trust's no contest clause is valid and not against public policy.

In *Alper*, the testator included a provision that if any of his children or grandchildren who were identified in his will contested that will, then the bequests of all these beneficiaries would be annulled, whether or not they had participated in the contest, and their shares would all go to his favorite daughter, the executrix of the will. (*Alper, supra,* 60 A.2d at p. 882.) One other daughter, who was named in the will but was not a beneficiary, although her children were, contested the will. (*Ibid.*) Thereafter, a son sued the executrix to enforce the bequests in the will. (*Id.* at p. 881.)

Noting that there was no ambiguity about the language of the forfeiture clause, the court in *Alper* found the forfeiture provision valid. (*Alper, supra,* 60 A.2d at p. 884.) In response to the argument that the clause was unjust because it deprived noncontesting, nonoffending beneficiaries of their testamentary gifts, the court held that the provision was not unjust, because "[a] testator knows best the character and disposition of those upon whom he bestows his bounty and understands better than anyone else what pains and penalties will be effective to prevent litigation over his will." (*Ibid.*) Since it is not unjust (or at least not unlawful) for a testator to favor some of his kin over others, or to disinherit selectively, the court reasoned, "surely, it cannot be deemed unjust that he bestow his bounty upon express conditions which, to his way of thinking, would secure his will against contest." (*Ibid.*) The court further observed that even if such a provision were deemed unjust, "it would constitute no sound objection to the validity of the will," because "[c]ourts do not undertake to substitute their own concepts of morality and generosity for those of testators." The court noted that the testator clearly added the forfeiture clause "in the hope that its drastic effect would be a deterrent upon all and that the many would be able to dissuade the few or the one from taking a step harmful to all." (*Ibid.*) The court further ruled that the forfeiture clause did not offend public policy, because "[n]o question of public policy is or can be involved therein. It is of no interest or concern to the public which, if any, of a testator's children or other relatives shall succeed to his estate. If it were otherwise, then a testator would be unable to donate his estate to charity, to the exclusion of his family. The law is otherwise."[10] (*Alper,* at p. 886.) The New Jersey Supreme Court upheld the equity court on the grounds that the testator could have given all the various beneficiaries' bequests to the executrix in the first place, and because the former beneficiaries' arguments all related "not to the public interest, but

---

[10] On this point, see also *Estate of Hite, supra,* 155 Cal. at page 440 (state generally has no interest in private matter of which beneficiaries receive testamentary property).

rather to matters of purely private concern affecting the wisdom of the exercise of the testamentary power." (*Alper v. Alper, supra,* 65 A.2d at p. 741.)

We find persuasive the *Alper* court's reasoning as to the testator's superior knowledge of his kin and how to design an effective deterrent to litigation, the power of a testator to impose conditions that can lead to disinheritance when the testator had the power to disinherit outright, and the essentially private, not public, nature of the interests involved. Robyn points out that *Alper* was overruled in *Haynes v. First Nat'l State Bk. of N. J.* (1981) 87 N.J. 163 [432 A.2d 890, 902–903]. But *Haynes* overruled *Alper* solely because a later state probate code provided that no contest clauses would no longer be valid if probable cause to contest a will existed.[11] (*Haynes, supra,* 432 A.2d at pp. 903–904.) Other out-of-state authorities further confirm the reasoning in *Alper.*[12]

▮ Based upon our review of Californian and foreign authorities, we hold that the no contest clause in this case, which provides that Robyn, Judith, and Dianne will all lose their testamentary gifts under the Trust if any one of them contests it, is not contrary to public policy. The clause is favored by the same public policy considerations that support traditional, individual-specific testamentary forfeiture clauses, and its differences from ordinary no contest clauses do not violate any statutorily or judicially established public policies in California.

---

[11] Robyn notes that the California Law Revision Commission is currently studying whether to revise the sections of the Probate Code that address no contest clauses, pursuant to a legislative enactment. (Stats. 2005, ch. 122.) This indication of "legislative wariness of no contest clauses" does not alter our analysis, however.

[12] In *Houston Estate, supra,* 89 A.2d at page 526, a testator's will provided that if his widow elected to take against his will, the couple's two sons would receive nothing. The widow did so elect, and the sons contested the provision in their father's will as void as against public policy. (*Ibid.*) The Pennsylvania Supreme Court rejected their arguments, holding, "[I]f a testator may disinherit his children, he may also condition their legacies so that the happening of a certain event will result in their disinheritance. Here, it is true, the widow was faced with the unfortunate choice of receiving a small legacy or causing the children to lose their bequests, but that, once again, is a question of the wisdom of the testator and not public policy." (*Ibid.*)

In *Perry v. Rogers, supra,* 114 S.W. at page 898, the testator left parcels of land to his surviving wife and the children of various previous marriages, with a provision that if any beneficiary challenged his will, then the bequests of all would go instead to his surviving wife. Certain children contested the will. (*Ibid.*) The court observed that such a condition might in some situations be unjust, even unconscionable, but that would depend upon all the circumstances surrounding the testator that influenced his action. (*Id.* at p. 899.) The court noted that in the absence of a complete statement of all such facts, "we should assume [these circumstances] were of a character to so explain the testator's act as to relieve it of such criticism. But we are of the opinion that, if it affirmatively appeared from the record that the will in the particular in question was unreasonable and unjust, the intention of the testator nevertheless being plain, we would have no right to revise or remake the will." (*Ibid.*)

## DISPOSITION

The order is reversed. Appellant Elizabeth shall recover her costs on appeal.

Mallano, Acting P. J., and Jackson, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.